380 So.2d 123 (1979)
Daryl SHIELDS, Plaintiff-Appellant,
v.
STATE of Louisiana Through the DEPARTMENT OF CORRECTIONS et al., Defendant-Appellee.
No. 12980.
Court of Appeal of Louisiana, First Circuit.
December 27, 1979.
*124 Garic Kenneth Barranger, Covington, for plaintiff-appellant Daryl shields.
John Digiulio, Baton Rouge, for defendant-appellee State of Louisiana, thru Department of Corrections.
Before EDWARDS, LEAR and SARTAIN, JJ.
SARTAIN, Judge.
This is a personal injury suit brought by an inmate at the Louisiana State Penitentiary at Angola.
On March 16, 1975, Daryl Shields, a seventeen year old prisoner, was approached by another inmate, one Hewitt Molex, who wanted to enter into a homosexual relationship with Shields. Molex had made similar advances on previous occasions but the plaintiff had declined those attempts and did so again at that time. He and Molex had argued at times concerning this relationship, but their conduct toward each other had not been violent.
On that evening, the plaintiff was in his cell watching television. Molex, who was allowed to leave his cell for a shower, approached the plaintiff, spoke to him briefly, and then threw a cup of acid or other caustic chemical, through the bars of Shields' cell and onto the plaintiff's face and upper body.
Shields tried to wash the chemical off in his lavatory bowl but the water had apparently been cut off for plumbing repairs. He then got what water he could from the toilet in his cell and washed himself until the guards got to his location and removed him to the prison hospital.
He remained at that facility for approximately six weeks during which time the burns were routinely treated. As they healed, however, extensive scarring of Shields' arms and upper chest took place. Large, unsightly keloid formations developed over the burn areas which caused considerable disfigurement and some restriction of movement.
A course of dermatological care was entered into over a period of months which consisted primarily of steroid injections into the scar tissue. This treatment had a positive effect on the involved areas and considerable *125 improvement was noted in the plaintiff's condition. . Despite that, however, Shields was left with scarring of tragic proportions which will apparently be permanent.
This suit seeks damages against the State of Louisiana through the Department of Corrections for the actions of Molex, who is now deceased, and for the alleged improper medical care given Shields by the State subsequent to the attack. After trial on the merits, judgment was rendered in favor of the State and the plaintiff has appealed. We affirm.
As noted by the district court, the responsibility of a penal institution to protect prisoners from attack by fellow inmates is not absolute in this state. In Davis v. State, Through Department of Corrections, 356 So.2d 452 (La.App. 1st Cir. 1977), we reviewed the applicable law as follows:
"The first question for our determination is what test of negligence is to be applied. The rule in cases of this type has often been stated as follows:
`A penal institution is not an insurer of an inmate against attacks by other inmates. The standard is that of a reasonable or ordinary care. The majority rule is that in order to hold the penal authorities liable for an injury inflicted upon an inmate by another inmate, the authorities must know or have reason to anticipate that harm will ensue and fail to use reasonable care in preventing the harm.' Parker v. State, 282 So.2d 483, 486 (La.1973).
In the case of Breaux v. State, 314 So.2d 449 (La.App. 1st Cir. 1975) a five judge panel of this circuit, while not rejecting the test of Parker, developed a separate test for determining the liability of the state. The court held that `the State is obligated to provide facilities and environments reasonably calculated to protect such persons from the danger of armed attack by fellow inmates.' Breaux, supra, at 457. When such facilities are not provided and the lack thereof causes injury to an inmate the state must respond in damages. On appeal the Supreme Court affirmed. Breaux v. State, 326 So.2d 481 (La.1976). However, the decision there was based on the Parker test; consideration of the test developed in Breaux was pretermitted.
Plaintiff urges that we should apply the broader test of Breaux in reaching our decision. Recently, however, our circuit has rejected Breaux and returned to the test of the earlier jurisprudence. Williams v. State, Through Department of Corrections, 351 So.2d 1273 (La.App. 1st Cir. 1977); Jones v. State, Through Department of Institutions, 346 So.2d 807 (La.App. 1st Cir. 1977) writ refused, 350 So.2d 671 (La.1977); Walker v. State, Through Department of Corrections, 346 So.2d 794 (La.App. 1st Cir. 1977) writ refused Sept. 21, 1977, 349 So.2d 879 (La.1977). We likewise reject the intermediate decision in Breaux, a decision which stands alone in the jurisprudence, and reaffirm the more recent jurisprudence of this circuit."
The record in this case clearly establishes that the prison authorities had no warning that Shields was in danger and no reason to anticipate that Molex might attack him. Shields related that he did not tell anyone of problems with his assailant and that the attack came as a surprise to him. Earl Wayne Huffman, a former cellmate of Shields, testified that he also did not know of prison personnel being told of their conflicts and that the conversations that took place between the two were quiet. He also stated that Molex was not considered to be dangerous by the other prisoners. We find no basis on which the Department of Corrections could be charged with failure to adequately protect the plaintiff.
The appellant also contends that the defendant is negligent because Molex was able to obtain a dangerous caustic chemical. He relies on the ruling of this court in Hampton v. State, Through Department of Corrections, 361 So.2d 257 (La.App. 1st Cir. 1978) when that case was originally before us. There, the plaintiff received acid burns under facts very similar to this case. At *126 issue here was a highly controversial stipulation entered into by the parties concerning the source of the chemical. In remanding for further proof in regard to that stipulation, we noted that if the employees of the state distributed the acid to prisoners without close supervision of its use, that the defendant would be guilty of negligence. See also the opinion of this court in Hampton v. State of Louisiana, et al., 376 So.2d 980 (La.App. 1st Cir. 1979).
The record in this case is not beneficial to the plaintiff in that regard. No proof whatsoever was offered as to what the chemical was, its source, or how it came to be in the possession of Molex. As in Hampton, it is theorized that this was plumber's acid which was distributed to the inmates for the maintenance of the toilets; however, no evidence was introduced which confirmed that supposition.
A wide range of contraband items invariably fall into the hands of prison inmates from untraceable sources. Here we know only that Molex had a dangerous chemical in his possession. Additional facts sufficient to prove fault on the part of the Department of Corrections, which are not present here, would be necessary to establish their liability. Possession of the acid, alone, does not make out a prima facie case of negligence against the defendant. As noted in the Parker decision previously referred to herein:
"Tragically, plaintiff's injury was the product of an environment in which violent, disturbed, and sexually abnormal men are crowded into a single prison unit under conditions that are far less than ideal. As the record shows, no degree of caution can altogether prevent such occurrences."
We also conclude that the plaintiff has failed to prove that he was given inadequate medical treatment by the prison authorities after his injury. Dr. Harry M. Katz, a staff physician at the prison hospital, testified concerning the care which was immediately administered upon Shields' admission and in the weeks that followed. We find that the record indicates that there was considerable concern for the plight of Shields and that extra efforts were made to relieve his condition.
He was eventually cared for by Dr. James Clinton Jones, a dermatologist, who performed the successful steroid injections. At page 8 of his deposition is found the following:
"Q Doctor, is it your feeling that he would have gotten an even better result if he had been treated earlier with this series of injections?
A There's no way to say. He got an excellent result as it were and I can't say he would have gotten a better result had he been treated earlier or not."
The record contains absolutely no proof of improper medical treatment on the part of the defendant. The judgment of the district court is, therefore, affirmed at appellant's cost.
AFFIRMED.