417 So.2d 416 (1982)
James McGEE, # 73523
v.
The STATE of Louisiana Through the LOUISIANA DEPARTMENT OF CORRECTIONS and/or the Louisiana Board of Corrections.
No. 14942.
Court of Appeal of Louisiana, First Circuit.
June 29, 1982.
*417 Robert D. Downing, Baton Rouge, for plaintiff-appellant James McGee.
Archie Perry, Staff Atty., Dept. of Justice, Brady Louis Jones, III, Baton Rouge, for defendant-appellee State of Louisiana, Through Louisiana Dept. of Corrections and/or Louisiana Bd. of Corrections.
Before COVINGTON, COLE and WATKINS, JJ.
COLE, Judge.
The issue presented is whether or not the State is liable for James McGee's personal injuries sustained while he was incarcerated at Angola State Prison.
On July 30, 1976, plaintiff and a fellow inmate, James Carney, had an argument which resulted in Carney injuring plaintiff with a yard tool known as a "ditch bank blade." The argument arose at approximately 10:00 A.M. in the dormitory at Camp I at Angola. Camp I is a minimum security camp with all inmates classified as "trusties." Plaintiff, resting on his bunk, was disturbed by Carney's loud talking and asked Carney to carry on his conversation elsewhere. Tempers flared and Carney went into the dorm office and returned swinging a ditch bank blade at plaintiff. A struggle ensued and Carney struck plaintiff with the tool, severely cutting plaintiff's right bicep. Plaintiff was taken to the Angola hospital and then to Earl K. Long Hospital in Baton Rouge. The muscle was severed to the bone and the bone itself was fractured.
Plaintiff filed suit against the State, through the Department of Corrections, alleging their negligence in failing to provide an adequate number of guards and in allowing Carney to have access to the dangerous tool. A hearing was held before Commissioner Norbert C. Rayford. The Commissioner issued a report wherein he found the State free of fault because "the plaintiff did not prove by a preponderance of the evidence that the Department of Corrections knew or should have had reason to anticipate that the resulting harm would ensue and failed to use reasonable care in preventing that harm." Plaintiff then filed a rule to traverse the finding of the Commissioner and the matter was reviewed by the Nineteenth Judicial District Court. The district court agreed with the findings of the Commissioner and therefore dismissed the case. Plaintiff then filed this devolutive appeal.
Appellant raises numerous errors but they may be reduced to two basic questions. One, what is the State's standard of care as to prisoners' safety? Two, what is the effect of a possible violation of a federal court order concerning the requirement two guards be on duty at all times?
*418 As reflected in recent jurisprudence, it is well settled the State is not an insurer of an inmate against an attack by another. Further, the State is liable for such injuries only when it is proven the prison officials knew or had reason to anticipate harm would ensue and yet failed to use reasonable care in preventing the harm. Parker v. State, 282 So.2d 483 (La.1973); Shields v. State Through Dept. of Corrections, 380 So.2d 123 (La.App. 1st Cir. 1979), writ denied 1980; Neathery v. State, etc., 395 So.2d 407 (La.App. 3d Cir. 1981).
There was no evidence at the hearing indicating the prison officials knew of prior threats or previous confrontations between these two inmates. The dispute arose spontaneously and was culminated in a matter of moments. Therefore, we conclude the State had no reason to anticipate the harm would ensue.
Plaintiff does not dispute the general rule set forth by the jurisprudence but focuses instead on the State's duty to supervise prisoners using dangerous weapons. He relies heavily upon language in Hampton v. State, Through Dept. of Corrections, 361 So.2d 257 (La.App. 1st Cir. 1978). The case involved injury sustained by an inmate when a fellow prisoner threw acid in his face. The issue on appeal was a procedural one concerning the propriety of the trial court's allowing the State to withdraw a stipulation that the prison officials had distributed the acid to the inmates for the purpose of cleaning the toilets. This court dealt with the stipulation issue and remanded the case to discover whether or not the stipulation had been made through error of fact and was therefore properly withdrawn. The substantive issue of liability was not reached by this court but the following remark was made at page 259:
"However, we are of the opinion that if the State, in fact, distributed acid to the inmates without supervising them closely in the use thereof, that it was guilty of negligence. The stipulation hereinabove referred to, coupled with the fact that this incident occurred, necessarily lead to that conclusion."
Appellant insists the inmates in the present case were not supervised in their use of the tools and therefore, under Hampton, the State is negligent.
We do not find the language in Hampton to compel a finding of liability. First, the language could be classified as "dicta" since the substantive issue of liability was not decided by this court.[1] Even if we did grant the language some authoritative weight, the facts of the two cases make them readily distinguishable because of the different classifications of the prisoners involved.
As opposed to the minimum security or "trusty" classification of the inmates in this case, those in Hampton were classified as maximum security. While Camp I is an open dormitory, allowing inmates freedom to come and go within their camp, the prisoners in Hampton resided in a cell block where the inmates were confined to their cells 24 hours a day except for one hour in which they were allowed to exercise and to take a shower. The exercise and shower schedule was arranged so only one cell (containing two inmates) was opened at a time. This arrangement suggests the prisoners residing there were considered extremely dangerous and required constant supervision. In that situation the State would have a duty to exercise great care in allowing the inmates access to any dangerous instrumentality. We agree the State would be negligent in distributing acid to these inmates without extremely close supervision.
At the hearing it was revealed the method of distributing the yard tools was somewhat casual. Men assigned to yard duty, such as James Carney, were to ask the officer on duty for permission to use the tools as the need arose. The officer would then allow the inmate the enter the storage *419 closet (adjacent to the office) and get the tool. There was no formal system of checking the tools in or out. Drue Bergeron, a correctional officer assigned to Camp I on the day of the incident, testified sometimes the guards were called away from the office momentarily and on such occasions it would be possible for prisoners to take a tool without permission.
Although this method of tool distribution is somewhat informal, we do not find it unreasonable in the context of a minimum security area. Prisoners assigned to Camp I have earned their classification by demonstrating their ability to be trusted. Responsibility should be encouraged in such a setting and it is appropriate the inmates should have some freedom in performing their daily jobs around the camp. Therefore we decline to say the State was negligent in their method of handling the tools.
Appellant further contends the State is liable for the injury because it violated a federal court order concerning the number of guards required to be on duty. In Hayes Williams v. McKeithen,[2] No. 71-98 the U. S. District Court for the Middle District of Louisiana ordered two correctional officers be on duty at each dormitory on a 24-hour basis. We reject this argument for two reasons.
First, the evidence did not establish the court order was violated. On the day in question three correctional officers were assigned to Camp I: Mr. Beauboeuf, Mr. Bergeron and Lieutenant Cavalier. Mr. Bergeron was in the adjoining kitchen at the time of the incident and Lt. Cavalier had left Camp I and had gone to the warehouse to get supplies. Evidence at the hearing was inconclusive as to Mr. Beauboeuf's whereabouts at the moment of the altercation but it was established he appeared shortly thereafter. Therefore, it is apparent three officers were assigned to Camp I and two were on the immediate premises at the time of the incident.
However, we need not determine whether or not the order was violated because we agree with the Commissioner a violation of the order does not mean there was negligence per se. We quote from the Commissioner's report:
"Reading the Hampton and Shields decisions together and in conjunction with Judge West's order, supra, it becomes evident that a violation of a particular provision of the order does not make out a prima facie case that the State is negligent; the plaintiff nonetheless must prove fault on the part of the State to establish its liability."
In conclusion, the State did not violate its duty of reasonable care in that it had no reason to anticipate a disturbance between the two inmates. The method of tool distribution was not unreasonable under the circumstances and a possible violation of the federal court order does not in and of itself establish a prima facie case of negligence. For these reasons, the judgment of the trial court is affirmed. Costs are assessed against appellant.
AFFIRMED.
NOTES
[1] Although the case was appealed once more to this court, the issue again concerned the stipulation and the substantive issue was not directly addressed. See Hampton v. State, 376 So.2d 980 (La.App. 1st Cir. 1979).
[2] We have been unable to find a citation for this case. Apparently, it is unreported at this time.