GULOTTA, Judge.
Charles C. Foti, Jr., Criminal Sheriff of Orleans Parish, appeals from a $193,059.00 judgment in favor of plaintiff, Leroy Moore, Jr., a former inmate of the Orleans Parish Prison, for injuries sustained during his incarceration, when two fellow prisoners burned him with flammable liquid spray deodorant. We reverse.
Moore sued Foti, (individually and in his capacity as the official responsible for operation of the prison), Foti’s liability insurers, and the two inmates, Gerard Edwards and Roger Turner. After default judgments were rendered against the inmates, the claims against Foti were tried on the merits.
In awarding judgment in Moore’s favor, the trial judge concluded that Foti had breached his duty to use reasonable care to protect Moore against assaults by other prisoners by negligently distributing the flammable deodorant to the inmates through the prison commissary and allowing them to “hoard” it in their cells, when Foti “knew or should have known that prisoners have demonstrated great ingenuity in creating weapons to perpetrate acts of violence against fellow prisoners.”
Appealing, Foti contends the trial court erred: 1) in finding him negligent; 2) in failing to find plaintiff was contributorily negligent or had assumed the risk of the attack; and 3) in awarding plaintiff an excessive verdict where he had failed to mitigate his damages by seeking proper medical attention and following the advice of his physicians. The inmates Edwards and Turner have not appealed, and the default judgment against them is now final.
*531 The attack on Moore occurred on Tier B-l of the parish prison, a “medium security” area that was described by Sheriff Foti as “one of the more closely supervised tiers.” ' It contained “a general cross section” of the prison population. Moore, who was serving time for issuing worthless checks, had recently been transferred to Tier B-l after being held on a disciplinary tier for violating rules of a restitution program.
Gerard Edwards,, a convicted murderer also housed on the tier, suspected Moore of stealing $5 from him. In retaliation, Edwards and his cellmate, Roger Turner, poured into an ice cream carton some Ban Basic liquid deodorant purchased from the prison commissary. Edwards and Turner then doused a sleeping Moore with the deodorant and set him afire with a burning newspaper.
At the time of his injury, Moore was an “assistant tier representative” whose duties included reporting to authorities trouble among the inmates. On the day before the attack, Moore testified that Edwards had complained to him that $5 had been taken from his cell. Moore offered to have the tier “shaken down” or searched, but Edwards replied that he “would take care of it himself” and that “some black S.O.B. was going to burn.” Moore then reported to the deputy on the tier that some of Edwards money had been taken or was missing, but did not tell him of Edwards’ threat, since he considered it to be “idle”.
After the incident, Edwards told investigating officers that he and Moore had an argument over the $5 and that Moore had threatened to burn him. Plaintiff denied these allegations.
Gordon Goldman, a chemist, testified that the deodorant is a mixture of 80% ethylnol and 20% water that can ignite from burning paper. The actual container(s) of deodorant used in the attack on Moore was not available at trial. According to Goldman, the product has had the same content for several years and has a warning on the packaging that it is “flammable”.
Sheriff Foti testified that the deodorant had been sold through the prison canteen and used by inmates without incident for five years before the attack on Moore. According to Foti, items sold to the general public, such as this deodorant, were made available to prisoners unless they were misused. Foti testified that inmates can turn “anything” into some kind of a weapon. Prisoners were allowed to have cigarettes, matches and lighters.
C. Paul Phelps, Jr., an expert in the operations and management of penal institutions, also recognized the “ingenuity” of prisoners in making weapons, but stated that prison authorities do not know how a product is going to be misused until after the fact. During his tenure as Director of the Department of Corrections for the State of Louisiana, Phelps had distributed flammable deodorant in his prison commissary. He testified that a “test” was not run on products selected by his prisoners, although he had “learned the hard way that things that were designated for one purpose ... can be used for something else.” Phelps testified that it is “impossible to keep flammables out of a prison.”
Louis A. Heyd, another expert in prison management, likewise recognized that innovative prisoners can make an innocent product into a weapon. He testified that inmates should not be given flammable fluids and that items labeled “flammable” should not be sold in prison canteens. During his testimony, Heyd cited the American Manual of Correctional Standards, which states that poisons such as denatured alcohol should never be in prisoners’ possession without constant supervision. Although Heyd stated that something less dangerous such as “stick deodorant” should be substituted, the evidence indicated flammable aerosol deodorant had been sold in the prison during his tenure as criminal sheriff, and he acknowledged that stick deodorant alcohol could be a weapon.
The settled rule, cited by the trial judge, is that a penal institution is not an insurer of an inmate against attacks by his fellow prisoners. The applicable standard *532 is reasonable or ordinary care. To hold penal authorities liable for inmate attacks, they must know or have reason to anticipate that harm will .ensue and fail to use reasonable care to prevent it. See Parker v. State, 282 So.2d 483 (La.1983); McGee v. State Through Dept. of Corrections, 417 So.2d 416 (La.App. 1st Cir.1982), writ denied 420 So.2d 981 (La.1982).
The evidence considered, we conclude the trial court erred, as a matter of law, in finding Sheriff Foti negligent under the circumstances of this case.
Applying the Parker rule, we note, at the outset, that there is no proof that Foti knew or had reason to anticipate that harm would ensue to plaintiff because of an attack by his fellow inmate Edwards. Prison authorities had no inkling of Edwards’ intent to burn someone on the tier over his missing $5. Moore himself interpreted Edwards’ threat as “an idle threat that would be made all day long in the prison” or “barfighting” that had never before resulted in a “physical altercation.” Moore told the prison guard of Edwards’ missing money but did not mention his threat.- Under these circumstances, Sheriff Foti cannot be held liable for failure to anticipate the attack, or to separate Edwards from plaintiff prior to the incident.
Further, we find no breach of Sheriff Foti’s duty in distributing the deodorant to his prisoners. Foti and the two prison experts all recognized the ingenuity of prisoners in turning innocent products into dangerous weapons. However, recognition of this does not mean that prison authorities must deprive all inmates of essential commodities such as deodorant simply because of the ever-present danger that some devious prisoner may pervert or misuse this normally safe product to harm someone. Indeed, Foti had distributed flammable deodorant to prisoners in the jail without incident for many years before this unfortunate attack. Moreover, there was no evidence that non-flammable deodorant was even commercially available for distribution to prisoners.
Significantly, in Jones v. State, Through Dept. of Institutions, 346 So.2d 807 (La.App. 1st Cir.1977), writ refused 350 So.2d 671 (La.1977), our brothers on the First Circuit dismissed a damage suit against the State by an inmate burned in an attack by a fellow prisoner with a flaming mixture of deodorant and lighter fluid. Relying on the Parker rule, the Jones court concluded that the correctional officers had no reasonable cause to anticipate any difficulty or attack between Jones and his aggressor and found no evidence of individual negligence of the persons immediately responsible for their supervision and custody.
Similarly, Shields v. State Through Dept. of Corrections, 380 So.2d 123 (La.App. 1st Cir.1979), writ denied 382 So.2d 164 (La.1980), also affirmed a dismissal of an inmate’s suit against penal authorities for injuries sustained when a fellow inmate threw a caustic chemical on the victim. The evidence in Shields clearly established that the prison authorities had no warning that the victim was in danger and had no reason to anticipate the attack on him. The Shields court noted that a wide range of contraband items invariably falls into the hands of prison inmates and that possession of the acid, alone, did not make out a prima facie case of negligence against the prison authorities. A fortiori, in our case, the distribution of a normally safe deodorant to the prison population without incident for many years does not make Sheriff Foti liable for harm that ensues when one inmate misuses that product to harm another.
We distinguish Hampton v. State, Through Dept. of Corrections, 361 So.2d 257 (La.App. 1st Cir.1978), relied on by plaintiff. Hampton involved an inmate attack with plumber’s acid where there had been no evidence of any prior trouble between plaintiff and his aggressor. Although concluding that there was no negligence in the manner in which the State protected the plaintiff, the First Circuit stated in dicta: “However, we are of the opinion if the State, in fact, distributed acid to inmates without supervising them closely, in the use thereof, that it was guilty of negligence.” The First Circuit remanded the matter to *533 the trial court for a possible finding “as to whether the State was negligent in its handling of acid.”
The dicta in the original Hampton opinion, and its successor, Hampton v. State, 376 So.2d 980 (La.App. 1st Cir.1979), writ denied 378 So.2d 432 (La.1979), are not persuasive of a different result in our case. Moreover, distribution of caustic acid to inmates is factually dissimilar from distribution of personal toiletries such as deodorant. The Hampton case is simply inapposite to the instant ease.
Accordingly, we conclude the evidence was insufficient to prove that Sheriff Foti should have anticipated the attack in our case or that he was negligent in distributing the deodorant used in it. The judgment in favor of plaintiff is therefore reversed and set aside. Judgment is now rendered dismissing plaintiffs suit at his cost.
REVERSED AND RENDERED.