387 So.2d 1188 (1980)
Arenithie WHITE, for the Use and Benefit of James Henry White
v.
C. Paul PHELPS et al.
No. 13388.
Court of Appeal of Louisiana, First Circuit.
June 9, 1980.
*1189 Cyrus J. Greco, Baton Rouge, for plaintiff-appellant, Arenithie White.
Arthur E. Stallworth, Staff Atty., Baton Rouge, for defendant-appellee, C. Paul Phelps, et al.
Before COVINGTON, LOTTINGER and COLE, JJ.
LOTTINGER, Judge.
This is a wrongful death action filed on behalf of a minor, James Henry White, whose father, James Henry Munson, was stabbed to death by two fellow inmates at Louisiana State Penitentiary at Angola. From a trial court judgment denying relief, the plaintiff has appealed.
At issue is whether the State and/or its employees breached their duty of care in allowing the two inmates to possess knives which were used in the stabbing death of inmate Munson.
The plaintiff, Arenithie White, mother and natural tutrix of the minor White, filed suit December 1, 1977, for the wrongful killing of Munson which occurred January 5, 1977. Named as defendants are the State of Louisiana, Through the Department of Corrections; C. Paul Phelps, Secretary of the Department; Ross Maggio, Warden of Angola; Ronald Dupree and Mulen Moses, shift supervisors at Angola; and Pat Turk, Floyd R. Payne, Michael Lachney and Wayne Mayeaux, correctional officers at Angola.
The plaintiff's principal allegation is that the defendant Moses had actual knowledge prior to the stabbing that several fights had occurred between Munson and one of the inmates accused of killing him, but that Moses and the other defendants took no action to assure that physical harm to the plaintiff's father did not ensue. The defendants denied that they knew or had reason to know that such a violent killing would befall inmate Munson. They claimed, alternatively, that the plaintiff's suit is barred by Munson's contributory negligence and assumption of risk.
The testimony showed that the killing took place at around noon on January 5, 1977, while the inmates were lining up to eat lunch in the medium security yard kitchen. The officers on duty noticed a disturbance in the lunch line and immediately thereafter saw the two inmates chasing Munson away from the line. The officers reacted quickly to the disturbance, but the stabbing occurred so swiftly that they were helpless to do anything about it. The two inmates each made three quick thrusts with their homemade knives into Munson's body, and Munson was dead by the time he reached the prison hospital. There are indications in the testimony and in the briefs filed by counsel that Munson had attempted to homosexually harass one of his killers prior to the stabbing. While such harassment may have been the motive for the killing, it has little if any bearing on the outcome of this case.
The evidence also shows that defendant Moses witnessed an altercation between Munson and one of his killers some 10 to 15 days prior to the killing. There was no disciplinary action taken as a result of this fight, but Moses testified he spoke to each of the inmates involved and was later assured by Munson that the rift between him and the other inmate had been settled.
*1190 Other evidence indicates that Angola authorities conducted random searches for contraband on a daily basis at the prison. Besides the random searches, inmates who entered their dormitory areas from outside areas were frisked as they entered their living quarters. While not every prisoner was searched for weapons every day, the evidence as a whole indicates that the Angola shakedown schedule was conducted with sufficient frequency to detect much of the contraband that filtered into the prison.
Warden Maggio admitted that the shakedown system, which was partially effected by the use of metal detectors, was not 100 per cent foolproof. Nevertheless, he claimed that the shakedowns had been a major deterrent in decreasing violent crimes since the prison came under federal court order in 1975. Maggio suggested that the rigorous shakedowns contributed to transforming Angola from perhaps the bloodiest prison in the nation between 1971 and 1975 to perhaps one of the safest prisons in the country at the time of the killing in this case. The stabbing death of Munson was the only one which occurred in 1977, compared to 11 in 1975, 10 in 1973 and 8 in 1972.
The Warden also explained that Angola's policy is to segregate any prisoners who have enough bad blood between them to indicate that future violence is likely to occur. A minor fist fight or scuffle, however, will seldom merit permanent segregation and lockdown. The Warden also said that about 50 per cent of the stabbings in the penitentiary are homosexually related, and that the pattern of aggressive homosexual violence was partially the reason for the federal court order in 1975. Since the prison came under federal court order, additional cell blocks have been built to accommodate aggressive homosexual individuals.
The Angola employees who testified at trial said they had no indication that the two inmates planned to stab Munson, that the two inmates possessed knives or that any warning whatsoever of danger to Munson's personal well-being had been given.
The standard of care to which the state penitentiary and its employees is held in cases of violence by one inmate upon another was laid down by the Louisiana Supreme Court in Parker v. State, 282 So.2d 483 (La.1973). In Parker, the court adopted the majority rule that penal authorities will be held liable for injury inflicted upon one inmate by another inmate if they know or have reason to anticipate that the harm will ensue. The penal institution is not an insurer of an inmate's safety against attacks from other inmates, but must use reasonable care in preventing any harm. Notice of a feared attack alone is insufficient to support liability. For liability to attach, the court said, "the law requires at least adequate reason to anticipate harm and failure to take reasonable action to avert it." 282 So.2d at 486.
The trial judge found as a fact that the stabbing incident took place suddenly and without warning. He also found as a fact that Officer Moses witnessed an altercation between Munson and one of his adversaries, but that Moses learned in later casual conversations that the problems between the two inmates had been settled. Based primarily upon these two factual findings, the court found that the plaintiff had failed to prove her case by a preponderance of the evidence.
We do not feel that the trial court's factual findings were erroneous. The preponderance of the evidence shows that the only knowledge that the prison officials had of bad blood between Munson and his adversaries was the minor altercation that Officer Moses witnessed some 10 to 15 days prior to the stabbing death. Moses reasonably believed that no further violence would result. The evidence is also clear that the stabbing took place so quickly that none of the officers on the scene could react swiftly enough to prevent it. Additionally, the evidence is clear that Angola's system of random shakedowns for contraband was reasonable under the circumstances and that the prison did not violate its duty by failing to detect the knives used in this killing.
*1191 These findings lead to the inescapable conclusion that the prison and its employees fulfilled their duty of care to the inmate who was killed. The stabbing death of Munson was a tragic occurrence which reflects the violent atmosphere seething in Angola and other prisons throughout this country. We cannot hold, however, that the mere fact that a stabbing occurs is sufficient to impose liability upon the State and its employees.
Therefore, for the above and foregoing reasons, the decision of the trial court is affirmed at appellant's costs.
AFFIRMED.