# HUDSON *v.* McMILLIAN ET AL.

No. 90–6531.   Argued November 13, 1991—Decided February 25, 1992

O'CONNOR, J., delivered the opinion of the Court, in which REHNQUIST, C. J., and WHITE, KENNEDY, and SOUTER, JJ., joined, and in which STEVENS, J., joined as to Parts I, II–A, II–B, and II–C. STEVENS, J., filed an opinion concurring in part and concurring in the judgment, *post*, p. 12. BLACKMUN, J., filed an opinion concurring in the judgment, *post*, p. 13. THOMAS, J., filed a dissenting opinion, in which SCALIA, J., joined, *post*, p. 17.

*Alvin J. Bronstein,* by appointment of the Court, 500 U. S. 903, argued the cause for petitioner. With him on the briefs were *John A. Powell, Steven R. Shapiro, Mark J. Lopez,* and *Elizabeth Alexander.*

*Deputy Solicitor General Roberts* argued the cause for the United States as *amicus curiae* urging reversal. With him on the brief were *Solicitor General Starr, Assistant Attorneys General Dunne* and *Mueller, Acting Deputy Solicitor General Wright,* and *Ronald J. Mann.*

*Harry McCall, Jr.,* Special Assistant Attorney General of Louisiana, argued the cause for respondents. With him on the brief were *William J. Guste, Jr.,* Attorney General, *Jonathan C. McCall,* Special Assistant Attorney General, and *Jenifer Schaye, Clifton O. Bingham, Jr., Houston C. Gascon III,* and *Joseph Erwin Kopsa,* Assistant Attorneys General.*

---

*Briefs of *amici curiae* urging reversal were filed for Americans for Effective Law Enforcement, Inc., by *Daniel B. Hales, Emory A. Plitt, Jr., Wayne W. Schmidt,* and *James P. Manak;* for the D. C. Prisoners' Legal Services Project, Inc., by *Theodore A. Howard* and *Richard J. Arsenault;* for Human Rights Watch by *Cameron Clark;* and for the Prisoners' Legal Service of New York by *John A. Gresham* and *Stephen M. Latimer.*

A brief of *amici curiae* urging affirmance was filed for the State of Texas et al. by *Dan Morales,* Attorney General of Texas, *Will Pryor,* First Assistant Attorney General, *Mary F. Keller,* Deputy Attorney General, and *Michael P. Hodge, Charles A. Palmer, Sharon Felfe,* and *Adrian L. Young,* Assistant Attorneys General, joined by the Attorneys General for their respective States as follows: *Warren Price III* of Hawaii, *Joseph B. Meyer* of Wyoming, *Frankie Sue Del Papa* of Nevada, and *Robert A. Butterworth* of Florida.

JUSTICE O'CONNOR delivered the opinion of the Court.

This case requires us to decide whether the use of excessive physical force against a prisoner may constitute cruel and unusual punishment when the inmate does not suffer serious injury. We answer that question in the affirmative.

I

At the time of the incident that is the subject of this suit, petitioner Keith Hudson was an inmate at the state penitentiary in Angola, Louisiana. Respondents Jack McMillian, Marvin Woods, and Arthur Mezo served as corrections security officers at the Angola facility. During the early morning hours of October 30, 1983, Hudson and McMillian argued. Assisted by Woods, McMillian then placed Hudson in handcuffs and shackles, took the prisoner out of his cell, and walked him toward the penitentiary's "administrative lockdown" area. Hudson testified that, on the way there, McMillian punched Hudson in the mouth, eyes, chest, and stomach while Woods held the inmate in place and kicked and punched him from behind. He further testified that Mezo, the supervisor on duty, watched the beating but merely told the officers "not to have too much fun." App. 23. As a result of this episode, Hudson suffered minor bruises and swelling of his face, mouth, and lip. The blows also loosened Hudson's teeth and cracked his partial dental plate, rendering it unusable for several months.

Hudson sued the three corrections officers in Federal District Court under Rev. Stat. § 1979, 42 U. S. C. § 1983, alleging a violation of the Eighth Amendment's prohibition on cruel and unusual punishments and seeking compensatory damages. The parties consented to disposition of the case before a Magistrate, who found that McMillian and Woods used force when there was no need to do so and that Mezo expressly condoned their actions. App. 26. The Magistrate awarded Hudson damages of $800. *Id.*, at 29.

The Court of Appeals for the Fifth Circuit reversed. 929 F. 2d 1014 (1990). It held that inmates alleging use of excessive force in violation of the Eighth Amendment must prove: (1) significant injury; (2) resulting "directly and only from the use of force that was clearly excessive to the need"; (3) the excessiveness of which was objectively unreasonable; and (4) that the action constituted an unnecessary and wanton infliction of pain. *Id.*, at 1015. The court determined that respondents' use of force was objectively unreasonable because no force was required. Furthermore, "[t]he conduct of McMillian and Woods qualified as clearly excessive and occasioned unnecessary and wanton infliction of pain." *Ibid.* However, Hudson could not prevail on his Eighth Amendment claim because his injuries were "minor" and required no medical attention. *Ibid.*

We granted certiorari, 499 U. S. 958 (1991), to determine whether the "significant injury" requirement applied by the Court of Appeals accords with the Constitution's dictate that cruel and unusual punishment shall not be inflicted.

## II

In *Whitley* v. *Albers*, 475 U. S. 312 (1986), the principal question before us was what legal standard should govern the Eighth Amendment claim of an inmate shot by a guard during a prison riot. We based our answer on the settled rule that " 'the unnecessary and wanton infliction of pain . . . constitutes cruel and unusual punishment forbidden by the Eighth Amendment.' " *Id.*, at 319 (quoting *Ingraham* v. *Wright*, 430 U. S. 651, 670 (1977)) (internal quotation marks omitted).

What is necessary to establish an "unnecessary and wanton infliction of pain," we said, varies according to the nature of the alleged constitutional violation. 475 U. S., at 320. For example, the appropriate inquiry when an inmate alleges that prison officials failed to attend to serious medical needs is whether the officials exhibited "deliberate indifference."

See *Estelle* v. *Gamble,* 429 U. S. 97, 104 (1976). This standard is appropriate because the State's responsibility to provide inmates with medical care ordinarily does not conflict with competing administrative concerns. *Whitley, supra,* at 320.

By contrast, officials confronted with a prison disturbance must balance the threat unrest poses to inmates, prison workers, administrators, and visitors against the harm inmates may suffer if guards use force. Despite the weight of these competing concerns, corrections officials must make their decisions "in haste, under pressure, and frequently without the luxury of a second chance." 475 U. S., at 320. We accordingly concluded in *Whitley* that application of the deliberate indifference standard is inappropriate when authorities use force to put down a prison disturbance. Instead, "the question whether the measure taken inflicted unnecessary and wanton pain and suffering ultimately turns on 'whether force was applied in a good faith effort to maintain or restore discipline or maliciously and sadistically for the very purpose of causing harm.'" *Id.,* at 320–321 (quoting *Johnson* v. *Glick,* 481 F. 2d 1028, 1033 (CA2), cert. denied *sub nom. John* v. *Johnson,* 414 U. S. 1033 (1973)).

Many of the concerns underlying our holding in *Whitley* arise whenever guards use force to keep order. Whether the prison disturbance is a riot or a lesser disruption, corrections officers must balance the need "to maintain or restore discipline" through force against the risk of injury to inmates. Both situations may require prison officials to act quickly and decisively. Likewise, both implicate the principle that "'[p]rison administrators . . . should be accorded wide-ranging deference in the adoption and execution of policies and practices that in their judgment are needed to preserve internal order and discipline and to maintain institutional security.'" 475 U. S., at 321–322 (quoting *Bell* v. *Wolfish,* 441 U. S. 520, 547 (1979)). In recognition of these similarities, we hold that whenever prison officials stand ac-

cused of using excessive physical force in violation of the Cruel and Unusual Punishments Clause, the core judicial inquiry is that set out in *Whitley:* whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm.

Extending *Whitley*'s application of the "unnecessary and wanton infliction of pain" standard to all allegations of excessive force works no innovation. This Court derived the *Whitley* test from one articulated by Judge Friendly in *Johnson* v. *Glick, supra,* a case arising out of a prisoner's claim to have been beaten and harassed by a guard. Moreover, many Courts of Appeals already apply the *Whitley* standard to allegations of excessive force outside of the riot situation. See *Corselli* v. *Coughlin,* 842 F. 2d 23, 26 (CA2 1988); *Miller* v. *Leathers,* 913 F. 2d 1085, 1087 (CA4 1990) (en banc), cert. denied, 498 U. S. 1109 (1991); *Haynes* v. *Marshall,* 887 F. 2d 700, 703 (CA6 1989); *Stenzel* v. *Ellis,* 916 F. 2d 423, 427 (CA8 1990); *Brown* v. *Smith,* 813 F. 2d 1187, 1188 (CA11 1987). But see *Unwin* v. *Campbell,* 863 F. 2d 124, 130 (CA1 1988) (rejecting application of *Whitley* standard absent "an actual disturbance").

## A

Under the *Whitley* approach, the extent of injury suffered by an inmate is one factor that may suggest "whether the use of force could plausibly have been thought necessary" in a particular situation, "or instead evinced such wantonness with respect to the unjustified infliction of harm as is tantamount to a knowing willingness that it occur." 475 U. S., at 321. In determining whether the use of force was wanton and unnecessary, it may also be proper to evaluate the need for application of force, the relationship between that need and the amount of force used, the threat "reasonably perceived by the responsible officials," and "any efforts made to temper the severity of a forceful response." *Ibid.* The absence of serious injury is therefore relevant to the Eighth Amendment inquiry, but does not end it.

Respondents nonetheless assert that a significant injury requirement of the sort imposed by the Fifth Circuit is mandated by what we have termed the "objective component" of Eighth Amendment analysis. See *Wilson* v. *Seiter*, 501 U. S. 294, 298 (1991). *Wilson* extended the deliberate indifference standard applied to Eighth Amendment claims involving medical care to claims about conditions of confinement. In taking this step, we suggested that the subjective aspect of an Eighth Amendment claim (with which the Court was concerned) can be distinguished from the objective facet of the same claim. Thus, courts considering a prisoner's claim must ask both if "the officials act[ed] with a sufficiently culpable state of mind" and if the alleged wrongdoing was objectively "harmful enough" to establish a constitutional violation. *Id.*, at 298, 303.

With respect to the objective component of an Eighth Amendment violation, *Wilson* announced no new rule. Instead, that decision suggested a relationship between the requirements applicable to different types of Eighth Amendment claims. What is necessary to show sufficient harm for purposes of the Cruel and Unusual Punishments Clause depends upon the claim at issue, for two reasons. First, "[t]he general requirement that an Eighth Amendment claimant allege and prove the unnecessary and wanton infliction of pain should . . . be applied with due regard for differences in the kind of conduct against which an Eighth Amendment objection is lodged." *Whitley, supra*, at 320. Second, the Eighth Amendment's prohibition of cruel and unusual punishments "'draw[s] its meaning from the evolving standards of decency that mark the progress of a maturing society,'" and so admits of few absolute limitations. *Rhodes* v. *Chapman*, 452 U. S. 337, 346 (1981) (quoting *Trop* v. *Dulles*, 356 U. S. 86, 101 (1958) (plurality opinion)).

The objective component of an Eighth Amendment claim is therefore contextual and responsive to "contemporary standards of decency." *Estelle, supra*, at 103. For in-

stance, extreme deprivations are required to make out a conditions-of-confinement claim. Because routine discomfort is "part of the penalty that criminal offenders pay for their offenses against society," *Rhodes, supra,* at 347, "only those deprivations denying 'the minimal civilized measure of life's necessities' are sufficiently grave to form the basis of an Eighth Amendment violation." *Wilson, supra,* at 298 (quoting *Rhodes, supra,* at 347) (citation omitted). A similar analysis applies to medical needs. Because society does not expect that prisoners will have unqualified access to health care, deliberate indifference to medical needs amounts to an Eighth Amendment violation only if those needs are "serious." See *Estelle* v. *Gamble,* 429 U. S., at 103–104.

In the excessive force context, society's expectations are different. When prison officials maliciously and sadistically use force to cause harm, contemporary standards of decency always are violated. See *Whitley, supra,* at 327. This is true whether or not significant injury is evident. Otherwise, the Eighth Amendment would permit any physical punishment, no matter how diabolic or inhuman, inflicting less than some arbitrary quantity of injury. Such a result would have been as unacceptable to the drafters of the Eighth Amendment as it is today. See *Estelle, supra,* at 102 (proscribing torture and barbarous punishment was "the primary concern of the drafters" of the Eighth Amendment); *Wilkerson* v. *Utah,* 99 U. S. 130, 136 (1879) ("[I]t is safe to affirm that punishments of torture . . . and all others in the same line of unnecessary cruelty, are forbidden by [the Eighth Amendment]").

That is not to say that every malevolent touch by a prison guard gives rise to a federal cause of action. See *Johnson* v. *Glick,* 481 F. 2d, at 1033 ("Not every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers, violates a prisoner's constitutional rights"). The Eighth Amendment's prohibition of "cruel and unusual" punishments necessarily excludes from constitutional recognition

*de minimis* uses of physical force, provided that the use of force is not of a sort "'repugnant to the conscience of mankind.'" *Whitley*, 475 U. S., at 327 (quoting *Estelle, supra*, at 106) (internal quotation marks omitted).

In this case, the Fifth Circuit found Hudson's claim untenable because his injuries were "minor." 929 F. 2d, at 1015. Yet the blows directed at Hudson, which caused bruises, swelling, loosened teeth, and a cracked dental plate, are not *de minimis* for Eighth Amendment purposes. The extent of Hudson's injuries thus provides no basis for dismissal of his § 1983 claim.

B

The dissent's theory that *Wilson* requires an inmate who alleges excessive use of force to show serious injury *in addition to* the unnecessary and wanton infliction of pain misapplies *Wilson* and ignores the body of our Eighth Amendment jurisprudence. As we have already suggested, the question before the Court in *Wilson* was "[w]hether a prisoner claiming that conditions of confinement constitute cruel and unusual punishment must show a culpable state of mind on the part of prison officials, and, if so, what state of mind is required." *Wilson, supra*, at 296. *Wilson* presented neither an allegation of excessive force nor any issue relating to what was dubbed the "objective component" of an Eighth Amendment claim.

*Wilson* did touch on these matters in the course of summarizing our prior holdings, beginning with *Estelle* v. *Gamble, supra*. *Estelle*, we noted, first applied the Cruel and Unusual Punishments Clause to deprivations that were not specifically part of the prisoner's sentence. *Wilson, supra*, at 297. As might be expected from this primacy, *Estelle* stated the principle underlying the cases discussed in *Wilson:* Punishments "incompatible with the evolving standards of decency that mark the progress of a maturing society" or "involv[ing] the unnecessary and wanton infliction of pain" are "repugnant to the Eighth Amendment." *Estelle, supra*,

at 102–103 (internal quotation marks omitted). This is the same rule the dissent would reject. With respect to the objective component of an Eighth Amendment claim, however, *Wilson* suggested no departure from *Estelle* and its progeny.

The dissent's argument that claims based on excessive force and claims based on conditions of confinement are no different in kind, *post,* at 24–25, and n. 4, is likewise unfounded. Far from rejecting *Whitley*'s insight that the unnecessary and wanton infliction of pain standard must be applied with regard for the nature of the alleged Eighth Amendment violation, the *Wilson* Court adopted it. See *Wilson,* 501 U. S., at 302–303. How could it be otherwise when the constitutional touchstone is whether punishment is cruel and unusual? To deny, as the dissent does, the difference between punching a prisoner in the face and serving him unappetizing food is to ignore the "'concepts of dignity, civilized standards, humanity, and decency'" that animate the Eighth Amendment. *Estelle, supra,* at 102 (quoting *Jackson* v. *Bishop,* 404 F. 2d 571, 579 (CA8 1968)).

### C

Respondents argue that, aside from the significant injury test applied by the Fifth Circuit, their conduct cannot constitute an Eighth Amendment violation because it was "isolated and unauthorized." Brief for Respondents 28. The beating of Hudson, they contend, arose from "a personal dispute between correctional security officers and a prisoner," and was against prison policy. *Ibid.* Respondents invoke the reasoning of courts that have held the use of force by prison officers under such circumstances beyond the scope of "punishment" prohibited by the Eighth Amendment. See *Johnson* v. *Glick, supra,* at 1032 ("[A]lthough a spontaneous attack by a guard is 'cruel' and, we hope, 'unusual,' it does not fit any ordinary concept of 'punishment'"); *George* v. *Evans,* 633 F. 2d 413, 416 (CA5 1980) ("[A] single, unauthorized assault by a guard does not constitute cruel and unusual pun-

ishment . . ."). But see *Duckworth* v. *Franzen,* 780 F. 2d 645, 652 (CA7 1985) ("If a guard decided to supplement a prisoner's official punishment by beating him, this would be punishment . . ."), cert. denied, 479 U. S. 816 (1986).

We take no position on respondents' legal argument because we find it inapposite on this record. The Court of Appeals left intact the Magistrate's determination that the violence at issue in this case was "not an isolated assault." App. 27, n. 1. Indeed, there was testimony that McMillian and Woods beat another prisoner shortly after they finished with Hudson. *Ibid.* To the extent that respondents rely on the unauthorized nature of their acts, they make a claim not addressed by the Fifth Circuit, not presented by the question on which we granted certiorari, and, accordingly, not before this Court. Moreover, respondents ignore the Magistrate's finding that Lieutenant Mezo, acting as a supervisor, "expressly condoned the use of force in this instance." App. 26.

The judgment of the Court of Appeals is

*Reversed.*

JUSTICE STEVENS, concurring in part and concurring in the judgment.

In *Whitley* v. *Albers,* 475 U. S. 312 (1986), the Court held that injuries to prisoners do not constitute cruel and unusual punishment when they are inflicted during a prison disturbance that "indisputably poses significant risks to the safety of inmates and prison staff" unless force was applied " 'maliciously and sadistically for the very purpose of causing harm.' " *Id.,* at 320–321 (citation omitted). The Court's opinion explained that the justification for that particularly high standard of proof was required by the exigencies present during a serious prison disturbance. "When the 'ever-present potential for violent confrontation and conflagration' ripens into *actual* unrest and conflict," *id.,* at 321 (citation omitted), then prison officials must be permitted to "take

into account the very real threats the unrest presents to inmates and prison officials alike." *Id.*, at 320.

Absent such special circumstances, however, the less demanding standard of "'unnecessary and wanton infliction of pain'" should be applied. *Estelle* v. *Gamble,* 429 U. S. 97, 104 (1976) (quoting *Gregg* v. *Georgia,* 428 U. S. 153, 173 (1976) (joint opinion of Stewart, Powell, and STEVENS, JJ.)); see *Unwin* v. *Campbell,* 863 F. 2d 124, 135 (CA1 1988) (opinion of Campbell, C. J.) ("[W]here institutional security is not at stake, the officials' license to use force is more limited; to succeed, a plaintiff need not prove malicious and sadistic intent"); see also *Wyatt* v. *Delaney,* 818 F. 2d 21, 23 (CA8 1987). This approach is consistent with the Court's admonition in *Whitley* that the standard to be used is one that gives "due regard for differences in the kind of conduct against which an Eighth Amendment objection is lodged." 475 U. S., at 320. In this case, because there was no prison disturbance and "no need to use any force since the plaintiff was already in restraints," App. 27, the prison guards' attack upon petitioner resulted in the infliction of unnecessary and wanton pain. *Id.*, at 28.

Although I think that the Court's reliance on the malicious and sadistic standard is misplaced, I agree with the Court that even this more demanding standard was met here. Accordingly, I concur in Parts I, II–A, II–B, and II–C of the Court's opinion and in its judgment.

JUSTICE BLACKMUN, concurring in the judgment.

The Court today appropriately puts to rest a seriously misguided view that pain inflicted by an excessive use of force is actionable under the Eighth Amendment only when coupled with "significant injury," *e. g.,* injury that requires medical attention or leaves permanent marks. Indeed, were we to hold to the contrary, we might place various kinds of state-sponsored torture and abuse—of the kind ingeniously designed to cause pain but without a telltale "significant

injury"—entirely beyond the pale of the Constitution. In other words, the constitutional prohibition of "cruel and unusual punishments" then might not constrain prison officials from lashing prisoners with leather straps, whipping them with rubber hoses, beating them with naked fists, shocking them with electric currents, asphyxiating them short of death, intentionally exposing them to undue heat or cold, or forcibly injecting them with psychosis-inducing drugs. These techniques, commonly thought to be practiced only outside this Nation's borders, are hardly unknown within this Nation's prisons. See, e. g., *Campbell* v. *Grammer*, 889 F. 2d 797, 802 (CA8 1989) (use of high-powered fire hoses); *Jackson* v. *Bishop*, 404 F. 2d 571, 574–575 (CA8 1968) (use of the "Tucker Telephone," a hand-cranked device that generated electric shocks to sensitive body parts, and flogging with leather strap). See also *Hutto* v. *Finney*, 437 U. S. 678, 682, n. 5 (1978).

Because I was in the dissent in *Whitley* v. *Albers*, 475 U. S. 312, 328 (1986), I do not join the Court's extension of *Whitley*'s malicious-and-sadistic standard to all allegations of excessive force, even outside the context of a prison riot. Nevertheless, I otherwise join the Court's solid opinion and judgment that the Eighth Amendment does not require a showing of "significant injury" in the excessive-force context. I write separately to highlight two concerns not addressed by the Court in its opinion.

I

Citing rising caseloads, respondents, represented by the Attorney General of Louisiana, and joined by the States of Texas, Hawaii, Nevada, Wyoming, and Florida as *amici curiae*, suggest that a "significant injury" requirement is necessary to curb the number of court filings by prison inmates. We are informed that the "significant injury requirement has been very effective in the Fifth Circuit in helping to control its system-wide docket management problems." Brief for Texas et al. as *Amici Curiae* 15.

This audacious approach to the Eighth Amendment assumes that the interpretation of an explicit constitutional protection is to be guided by pure policy preferences for the paring down of prisoner petitions. Perhaps judicial overload is an appropriate concern in determining whether statutory standing to sue should be conferred upon certain plaintiffs. See, *e. g.*, *Associated General Contractors of Cal., Inc.* v. *Carpenters*, 459 U. S. 519, 529–546 (1983) (identifying "judge-made rules" circumscribing persons entitled to sue under § 4 of the Clayton Act); *Blue Chip Stamps* v. *Manor Drug Stores*, 421 U. S. 723, 737–749 (1975) (identifying judicial "policy" considerations limiting standing under § 10(b) of the Securities Exchange Act of 1934). But this inherently self-interested concern has no appropriate role in interpreting the contours of a substantive constitutional right.

Since the burden on the courts is presumably worth bearing when a prisoner's suit has merit, the States' "concern" is more aptly termed a "conclusion" that such suits are simply without merit. One's experience on the federal bench teaches the contrary. Moreover, were particular classes of cases to be nominated for exclusion from the federal courthouse, we might look first to cases in which federal law is not sensitively at issue rather than to those in which fundamental constitutional rights are at stake. The right to file for legal redress in the courts is as valuable to a prisoner as to any other citizen. Indeed, for the prisoner it is more valuable. Inasmuch as one convicted of a serious crime and imprisoned usually is divested of the franchise, the right to file a court action stands, in the words of *Yick Wo* v. *Hopkins*, 118 U. S. 356, 370 (1886), as his most "fundamental political right, because preservative of all rights."

Today's ruling, in any event, does not open the floodgates for filings by prison inmates. By statute, prisoners—alone among all other § 1983 claimants—are required to exhaust administrative remedies. See 94 Stat. 352, 42 U. S. C. § 1997e(a); *Patsy* v. *Board of Regents of Florida*, 457 U. S.

496, 507–512 (1982). Moreover, prison officials are entitled to a determination before trial whether they acted in an objectively reasonable manner, thereby entitling them to a qualified immunity defense. *Procunier* v. *Navarette*, 434 U. S. 555, 561–562 (1978); see also *Harlow* v. *Fitzgerald*, 457 U. S. 800, 817–818 (1982) (unsubstantiated allegations of malice are insufficient to overcome pretrial qualified immunity). Additionally, a federal district court is authorized to dismiss a prisoner's complaint *in forma pauperis* "if satisfied that the action is frivolous or malicious." 28 U. S. C. § 1915(d). These measures should be adequate to control any docket-management problems that might result from meritless prisoner claims.

## II

I do not read anything in the Court's opinion to limit injury cognizable under the Eighth Amendment to physical injury. It is not hard to imagine inflictions of psychological harm—without corresponding physical harm—that might prove to be cruel and unusual punishment. See, *e. g.*, *Wisniewski* v. *Kennard*, 901 F. 2d 1276, 1277 (CA5) (guard placing a revolver in inmate's mouth and threatening to blow prisoner's head off), cert. denied, 498 U. S. 926 (1990). The issue was not presented here, because Hudson did not allege that he feared that the beating incident would be repeated or that it had caused him anxiety and depression. See App. 29.

As the Court makes clear, the Eighth Amendment prohibits the unnecessary and wanton infliction of "pain," rather than "injury." *Ante*, at 5. "Pain" in its ordinary meaning surely includes a notion of psychological harm. I am unaware of any precedent of this Court to the effect that psychological pain is not cognizable for constitutional purposes. If anything, our precedent is to the contrary. See *Sierra Club* v. *Morton*, 405 U. S. 727, 734 (1972) (recognizing Article III standing for "aesthetic" injury); *Brown* v. *Board of Education*, 347 U. S. 483, 494 (1954) (identifying schoolchildren's

feelings of psychological inferiority from segregation in the public schools).

To be sure, as the Court's opinion intimates, *ante*, at 9, *de minimis* or nonmeasurable pain is not actionable under the Eighth Amendment. But psychological pain can be more than *de minimis*. Psychological pain often may be clinically diagnosed and quantified through well-established methods, as in the ordinary tort context where damages for pain and suffering are regularly awarded. I have no doubt that to read a "physical pain" or "physical injury" requirement into the Eighth Amendment would be no less pernicious and without foundation than the "significant injury" requirement we reject today.

JUSTICE THOMAS, with whom JUSTICE SCALIA joins, dissenting.

We granted certiorari in this case "limited to the following question," which we formulated for the parties:

> " 'Did the Fifth Circuit apply the correct legal test when determining that petitioner's claim that his Eighth Amendment rights under the Cruel and Unusual Punishments Clause were not violated as a result of a single incident of force by respondents which did not cause a significant injury?' " 500 U. S. 903 (1991).

Guided by what it considers "the evolving standards of decency that mark the progress of a maturing society," *ante*, at 8 (internal quotation marks omitted), the Court today answers that question in the negative. I would answer it in the affirmative, and would therefore affirm the judgment of the Fifth Circuit. I respectfully dissent.

## I

The Magistrate who found the facts in this case emphasized that petitioner's injuries were "minor." App. 26, 28. The three judges of the Fifth Circuit who heard the case on

appeal did not disturb that assessment, and it has not been challenged here. The sole issue in this case, as it comes to us, is a legal one: Must a prisoner who claims to have been subjected to "cruel and unusual punishments" establish at a minimum that he has suffered a significant injury? The Court today not only responds in the negative, but broadly asserts that *any* "unnecessary and wanton" use of physical force against a prisoner *automatically* amounts to cruel and unusual punishment, whenever more than *de minimis* force is involved. Even a *de minimis* use of force, the Court goes on to declare, inflicts cruel and unusual punishment where it is "repugnant to the conscience of mankind." *Ante,* at 10 (internal quotation marks omitted).[1] The extent to which a prisoner is *injured* by the force—indeed, whether he is injured at all—is in the Court's view irrelevant.

In my view, a use of force that causes only insignificant harm to a prisoner may be immoral, it may be tortious, it may be criminal, and it may even be remediable under other provisions of the Federal Constitution, but it is not cruel and unusual punishment. In concluding to the contrary, the Court today goes far beyond our precedents.

### A

Until recent years, the Cruel and Unusual Punishments Clause was not deemed to apply at all to deprivations that were not inflicted as part of the sentence for a crime. For generations, judges and commentators regarded the Eighth Amendment as applying only to torturous punishments meted out by statutes or sentencing judges, and not generally to any hardship that might befall a prisoner during incarceration. In *Weems* v. *United States,* 217 U. S. 349 (1910), the Court extensively chronicled the background of the Amendment, discussing its English antecedents, its adoption by Congress, its construction by this Court, and the in-

---

[1] This point is pure dictum, because the force here was surely not *de minimis.*

terpretation of analogous provisions by state courts. Nowhere does *Weems* even hint that the Clause might regulate not just criminal sentences but the treatment of prisoners. Scholarly commentary also viewed the Clause as governing punishments that were part of the sentence. See T. Cooley, Constitutional Limitations *329 ("It is certainly difficult to determine precisely what is meant by cruel and unusual punishments. Probably any punishment *declared by statute* for an offence which was punishable in the same way at the common law, could not be regarded as cruel or unusual in the constitutional sense. And probably any new statutory offence may be punished to the extent and in the mode permitted by the *common law* for offences of similar nature. But those degrading punishments which in any State had become obsolete before its existing constitution was adopted, we think may well be held forbidden by it as cruel and unusual") (emphasis added). See also 3 J. Story, Commentaries on the Constitution of the United States 750–751 (1833).

Surely prison was not a more congenial place in the early years of the Republic than it is today; nor were our judges and commentators so naive as to be unaware of the often harsh conditions of prison life. Rather, they simply did not conceive of the Eighth Amendment as protecting inmates from harsh treatment. Thus, historically, the lower courts routinely rejected prisoner grievances by explaining that the courts had no role in regulating prison life. "[I]t is well settled that it is not the function of the courts to superintend the treatment and discipline of prisoners in penitentiaries, but only to deliver from imprisonment those who are illegally confined." *Stroud* v. *Swope,* 187 F. 2d 850, 851–852 (CA9), cert. denied, 342 U. S. 829 (1951). See also *Sutton* v. *Settle,* 302 F. 2d 286, 288 (CA8 1962) *(per curiam),* cert. denied, 372 U. S. 930 (1963); *United States ex rel. Atterbury* v. *Ragen,* 237 F. 2d 953, 954–956 (CA7 1956), cert. denied, 353 U. S. 964 (1957); *Banning* v. *Looney,* 213 F. 2d 771 (CA10 1954) *(per curiam); Sarshik* v. *Sanford,* 142 F. 2d 676 (CA5 1944). It

was not until 1976—185 years after the Eighth Amendment was adopted—that this Court first applied it to a prisoner's complaint about a deprivation suffered in prison. *Estelle* v. *Gamble*, 429 U. S. 97 (1976).

B

We made clear in *Estelle* that the Eighth Amendment plays a very limited role in regulating prison administration. The case involved a claim that prison doctors had inadequately attended an inmate's medical needs. We rejected the claim because the inmate failed to allege "acts or omissions sufficiently harmful to evidence *deliberate indifference* to *serious* medical needs." *Id.*, at 106 (emphasis added). From the outset, thus, we specified that the Eighth Amendment does not apply to every deprivation, or even every unnecessary deprivation, suffered by a prisoner, but *only* that narrow class of deprivations involving "serious" injury inflicted by prison officials acting with a culpable state of mind. We have since described these twin elements as the "objective" and "subjective" components of an Eighth Amendment prison claim. See *Wilson* v. *Seiter*, 501 U. S. 294, 298 (1991).

We have never found a violation of the Eighth Amendment in the prison context when an inmate has failed to establish either of these elements. In *Rhodes* v. *Chapman*, 452 U. S. 337 (1981), for instance, we upheld a practice of placing two inmates in a single cell on the ground that the injury alleged was insufficiently serious. Only where prison conditions deny an inmate "the minimal civilized measure of life's necessities," *id.*, at 347, we said, could they be considered cruel and unusual punishment. Similarly, in *Whitley* v. *Albers*, 475 U. S. 312 (1986), we held that a guard did not violate the Eighth Amendment when he shot an inmate during a prison riot because he had not acted with a sufficiently culpable state of mind. When an official uses force to quell a riot, we said, he does not violate the Eighth Amendment unless he acts " 'maliciously and sadistically for the very purpose of

causing harm.'" *Id.*, at 320–321 (quoting *Johnson* v. *Glick*, 481 F. 2d 1028, 1033 (CA2) (Friendly, J.), cert. denied *sub nom. John* v. *Johnson*, 414 U. S. 1033 (1973)).

We synthesized our Eighth Amendment prison jurisprudence last Term in *Wilson, supra.* There the inmate alleged that the poor conditions of his confinement *per se* amounted to cruel and unusual punishment, and argued that he should not be required in addition to establish that officials acted culpably. We rejected that argument, emphasizing that an inmate seeking to establish that a prison deprivation amounts to cruel and unusual punishment always must satisfy *both* the "objective component . . . (Was the deprivation sufficiently serious?)" *and* the "subjective component (Did the officials act with a sufficiently culpable state of mind?)" of the Eighth Amendment. *Id.*, at 298. Both are necessary components; neither suffices by itself.

These subjective and objective components, of course, are implicit in the traditional Eighth Amendment jurisprudence, which focuses on penalties meted out by statutes or sentencing judges. Thus, if a State were to pass a statute ordering that convicted felons be broken at the wheel, we would not separately inquire whether the legislature had acted with "deliberate indifference," since a statute, as an intentional act, necessarily satisfies an even higher state-of-mind threshold. Likewise, the inquiry whether the deprivation is objectively serious would be encompassed within our determination whether it was "cruel and unusual."

When we cut the Eighth Amendment loose from its historical moorings and applied it to a broad range of prison deprivations, we found it appropriate to make explicit the limitations described in *Estelle, Rhodes, Whitley,* and *Wilson.* "If the pain inflicted is not formally meted out *as punishment* by the statute or the sentencing judge, some mental element must be attributed to the inflicting officer before it can qualify," *Wilson,* 501 U. S., at 300 (emphasis in original)—thus, the subjective component. Similarly, because deprivations

of all sorts are the very essence of imprisonment, we made explicit the *serious* deprivation requirement to ensure that the Eighth Amendment did not transfer wholesale the regulation of prison life from executive officials to judges. That is why, in *Wilson,* we described the inquiry mandated by the objective component as: "[W]as the deprivation *sufficiently serious?*" *Id.,* at 298 (emphasis added). That formulation plainly reveals our prior assumption that a serious deprivation is *always* required. Under that analysis, a court's task in any given case was to determine whether the challenged deprivation was "sufficiently" serious. It was not, as the Court's interpretation today would have it, to determine whether a "serious" deprivation *is required at all.*[2]

## C

Given *Estelle, Rhodes, Whitley,* and *Wilson,* one might have assumed that the Court would have little difficulty answering the question presented in this case by upholding the Fifth Circuit's "significant injury" requirement.[3] Instead, the Court announces that "[t]he objective component of an Eighth Amendment claim is . . . contextual and responsive to contemporary standards of decency." *Ante,* at 8 (internal quotation marks omitted). In the context of claims alleging the excessive use of physical force, the Court then asserts, the serious deprivation requirement is satisfied by no serious deprivation at all. "When prison officials maliciously and

---

[2] While granting petitioner relief on his Eighth Amendment claim, the Court leaves open the issue whether isolated and unauthorized acts are "punishment" at all. This will, of course, be the critical question in future cases of this type. If we ultimately decide that isolated and unauthorized acts are not "punishment," then today's decision is a dead letter. That anomaly simply highlights the artificiality of applying the Eighth Amendment to prisoner grievances, whether caused by the random misdeeds of prison officials or by official policy.

[3] I do not believe that there is any substantive difference between the "serious deprivation" requirement found in our precedents and the Fifth Circuit's "significant injury" requirement.

sadistically use force to cause harm, contemporary standards of decency always are violated." *Ante,* at 9. Ascertaining prison officials' state of mind, in other words, is the *only* relevant inquiry in deciding whether such cases involve cruel and unusual punishment. In my view, this approach is an unwarranted and unfortunate break with our Eighth Amendment prison jurisprudence.

The Court purports to derive the answer to this case from *Whitley.* The sum and substance of an Eighth Amendment violation, the Court asserts, is " ' "the unnecessary and wanton infliction of pain." ' " *Ante,* at 5 (quoting *Whitley,* 475 U. S., at 319). This formulation has the advantage, from the Court's perspective, of eliminating the objective component. As noted above, however, the only dispute in *Whitley* concerned the subjective component; the prisoner, who had been shot, had self-evidently been subjected to an objectively serious injury. *Whitley* did not say, as the Court does today, that the *objective* component is contextual, and that an Eighth Amendment claim may succeed where a prisoner is not seriously injured. Rather, *Whitley* stands for the proposition that, assuming the existence of an objectively serious deprivation, the culpability of an official's state of mind depends on the context in which he acts. "*Whitley* teaches that, *assuming the conduct is harmful enough to satisfy the objective component of an Eighth Amendment claim,* see *Rhodes* v. *Chapman,* 452 U. S. 337 (1981), whether it can be characterized as 'wanton' depends upon the constraints facing the official." *Wilson, supra,* at 303 (emphasis modified). Whether officials subject a prisoner to the "unnecessary and wanton infliction of pain" is simply one way to describe the *state of mind inquiry* that was at issue in *Whitley* itself. As *Wilson* made clear, that inquiry is *necessary* but not *sufficient* when a prisoner seeks to show that he has been subjected to cruel and unusual punishment.

Perhaps to compensate for its elimination of the *objective* component in excessive force cases, the Court simultane-

ously makes it harder for prisoners to establish the *subjective* component. As we explained in *Wilson*, "deliberate indifference" is the baseline mental state required to establish an Eighth Amendment violation. 501 U. S., at 303. Departure from this baseline is justified where, as in *Whitley*, prison officials act in response to an emergency; in such situations their conduct cannot be characterized as "wanton" unless it is taken "maliciously and sadistically for the very purpose of causing harm." 475 U. S., at 320–321 (internal quotation marks omitted). The Court today extends the heightened mental state applied in *Whitley* to *all* excessive force cases, even where no competing institutional concerns are present. The Court simply asserts that "[m]any of the concerns underlying our holding in *Whitley* arise *whenever* guards use force to keep order." *Ante*, at 6 (emphasis added). I do not agree. Many excessive force cases do not arise from guards' attempts to "keep order." (In this very case, the basis for petitioner's Eighth Amendment claim is that the guards hit him when there was no need for them to use any force at all.) The use of excessive physical force is by no means invariably (in fact, perhaps not even predominantly) accompanied by a "malicious and sadistic" state of mind. I see no justification for applying the extraordinary *Whitley* standard to *all* excessive force cases, without regard to the constraints facing prison officials. The Court's unwarranted extension of *Whitley*, I can only suppose, is driven by the implausibility of saying that minor injuries imposed upon prisoners with anything less than a "malicious and sadistic" state of mind can amount to cruel and unusual punishment.

### D

The Court's attempts to distinguish the cases expressly resting upon the objective component are equally unconvincing. As noted above, we have required an extreme deprivation in cases challenging conditions of confinement, *Rhodes* v. *Chapman*, 452 U. S. 337 (1981). Why should such an ob-

jectively serious deprivation be required there and not here? The Court's explanation is that "routine discomfort is 'part of the penalty that criminal offenders pay for their offenses against society.'" *Ante,* at 9 (quoting *Rhodes, supra,* at 347). But there is quite a gap between "routine discomfort" and the denial of "the minimal civilized measure of life's necessities" required to establish an Eighth Amendment violation. In the Court's view, then, our society's standards of decency are not violated by anything short of uncivilized conditions of confinement (no matter how malicious the mental state of the officials involved), but are automatically violated by any malicious use of force, regardless of whether it even causes an injury. This is puzzling. I see no reason why our society's standards of decency should be more readily offended when officials, with a culpable state of mind, subject a prisoner to a deprivation on one discrete occasion than when they subject him to continuous deprivations over time. If anything, I would think that a deprivation inflicted continuously over a long period would be of greater concern to society than a deprivation inflicted on one particular occasion.[4]

The Court's attempted distinction of *Estelle* is also unpersuasive: "Because society does not expect that prisoners will

---

[4] Moreover, by distinguishing this case from "conditions" cases, the Court resurrects a distinction that we have repudiated as "not only unsupportable in principle but unworkable in practice." *Wilson* v. *Seiter,* 501 U. S. 294, 299, and n. 1 (1991). When officials use force against a prisoner, whether once or every day, that is a "condition" of his confinement. It is unwise, in my view, to make the very existence of the serious deprivation requirement depend on whether a particular claim is characterized as one challenging a "condition" or one challenging a "specific act." Cf. *McCarthy* v. *Bronson,* 500 U. S. 136, 139, 143 (1991) ("[C]onditions of confinement" under 28 U. S. C. § 636(b)(1)(B) include not only challenges to ongoing prison conditions but also challenges to "isolated incidents" of excessive force, in part because "the distinction between cases challenging ongoing conditions and those challenging specific acts of alleged misconduct will often be difficult to identify").

have unqualified access to health care, deliberate indifference to medical needs amounts to an Eighth Amendment violation only if those needs are 'serious.'" *Ante*, at 9. In my view, our society similarly has no expectation that prisoners will have "unqualified" freedom from force, since forcibly keeping prisoners in detention is what prisons are all about. Why should the seriousness of injury matter when doctors maliciously decide not to treat an inmate, but not when guards maliciously decide to strike him?

At bottom, of course, there is no conclusive way to refute the Court's assertions about our society's "contemporary notions of decency." That is precisely why this Court has long insisted that determinations of whether punishment is cruel and unusual "should be informed by objective factors to the maximum possible extent," *Rhodes, supra,* at 346 (internal quotation marks omitted).

The Court attempts to justify its departure from precedent by saying that if a showing of serious injury were required, "the Eighth Amendment would permit any physical punishment, no matter how diabolic or inhuman, inflicting less than some arbitrary quantity of injury." *Ante,* at 9. That statement, in my view, reveals a central flaw in the Court's reasoning. "[D]iabolic or inhuman" punishments *by definition* inflict serious injury. That is not to say that the injury must be, or always will be, *physical.* "Many things—beating with a rubber truncheon, water torture, electric shock, incessant noise, reruns of 'Space 1999'—may cause agony as they occur yet leave no enduring injury. The state is not free to inflict such pains without cause just so long as it is careful to leave no marks." *Williams* v. *Boles,* 841 F. 2d 181, 183 (CA7 1988). Surely a prisoner who alleges that prison officials tortured him with a device like the notorious "Tucker Telephone" described by JUSTICE BLACKMUN, *ante,* at 14, has alleged a serious injury. But petitioner has not alleged a deprivation of this type; the injuries he has alleged are entirely physical and were found below to be "minor."

Furthermore, to characterize the serious injury requirement as "arbitrary" is not to explain why it should be eliminated in this particular context while it remains applicable to all other prison deprivations. To be sure, it will not always be obvious which injuries are "serious." But similarly, it will not always be obvious which medical needs are "serious," or which conditions of confinement deny "the minimal civilized measure of life's necessities." These determinations are, however, required by the Eighth Amendment, which prohibits *only* those punishments that are "cruel and unusual." As explained above, I think our precedents clearly establish that a prisoner seeking to prove that he has been subjected to "cruel and unusual" punishment must always show that he has suffered a serious deprivation.

If the Court is to be taken at its word that "the unnecessary and wanton infliction of pain" upon a prisoner *per se* amounts to cruel and unusual punishment, the implications of today's opinion are sweeping. For this formulation replaces the objective component described in our prior cases with a "necessity" component. Many prison deprivations, however, are not "necessary," at least under any meaningful definition of that word. Thus, under today's analysis, *Rhodes* was wrongly decided. Surely the "double celling" of inmates was not "necessary" to fulfill the State's penal mission; in fact, the prison in that case had been designed for individual cells, but was simply overcrowded. 452 U. S., at 343. We rejected the prisoners' claim in *Rhodes* not because we determined that double celling was "necessary," but because the deprivations alleged were not sufficiently serious to state a claim of cruel and unusual punishment. After today, the "necessity" of a deprivation is apparently the only relevant inquiry beyond the wantonness of official conduct. This approach, in my view, extends the Eighth Amendment beyond all reasonable limits.

## II

Today's expansion of the Cruel and Unusual Punishments Clause beyond all bounds of history and precedent is, I suspect, yet another manifestation of the pervasive view that the Federal Constitution must address all ills in our society. Abusive behavior by prison guards is deplorable conduct that properly evokes outrage and contempt. But that does not mean that it is invariably unconstitutional. The Eighth Amendment is not, and should not be turned into, a National Code of Prison Regulation. To reject the notion that the infliction of concededly "minor" injuries can be considered either "cruel" or "unusual" punishment (much less cruel *and* unusual punishment) is not to say that it amounts to acceptable conduct. Rather, it is to recognize that primary responsibility for preventing and punishing such conduct rests not with the Federal Constitution but with the laws and regulations of the various States.

Petitioner apparently could have, but did not, seek redress for his injuries under state law.[5] Respondents concede that

---

[5] According to respondents:

"Louisiana state courts are open to prisoners for the purpose of suing prison personnel who have caused them unjustified wrongs. For example, see *Parker* v. *State,* 282 So. 2d 483, 486–87 (La. 1973), *cert. denied,* 414 U. S. 1093 (1973); *Anderson* v. *Phelps,* 451 So. 2d 1284, 1285 (La. Ct. App. 1st Cir. 1984); *McGee* v. *State,* 417 So. 2d 416, 418 (La. Ct. App. 1st Cir.), *writ denied,* 420 So. 2d 871 (La. 1982); *Neathery* v. *State,* 395 So. 2d 407, 410 (La. Ct. App. 3d Cir. 1981); *Shields* v. *State Through Dep't of Corrections,* 380 So. 2d 123 (La. Ct. App. 1st Cir. 1979), *writ denied,* 382 So. 2d 164; *Craft* v. *State,* 308 So. 2d 290, 295 (La. Ct. App. 1st Cir.), *writ denied,* 319 So. 2d 441 (La. 1975), *cert. denied,* 423 U. S. 1075, 96 S. Ct. 859, 47 L. Ed. 2d 84 (1975); *Lewis* v. *Listi,* 377 So. 2d 551, 553 (La. Ct. App. 3d Cir. 1979); *Bastida* v. *State,* 269 So. 2d 544, 545 (La. Ct. App. 1st Cir. 1972); *Adams* v. *State,* 247 So. 2d 149, 151 (La. Ct. App. 1st Cir. 1971); *St. Julian* v. *State,* 98 So. 2d 284 (La. Ct. App. 1st Cir. 1957); *Nedd* v. *State,* 281 So. 2d 131, 132 (La. 1973), *cert. denied,* 415 U. S. 957, 94 S. Ct. 1484, 39 L. Ed. 2d 572 (1974); *Mack* v. *State,* 529 So. 2d 446, 448 (La. Ct. App. 1st Cir. 1988), *writ denied,* 533 So. 2d 359 (La. 1988); *Walden* v. *State,* 430 So. 2d 1224 (La. Ct. App. 1st Cir. 1983), *writ denied,* 435 So. 2d 430 (La. 1983);

if available state remedies were not constitutionally adequate, petitioner would have a claim under the Due Process Clause of the Fourteenth Amendment. Cf. *Davidson* v. *Cannon*, 474 U. S. 344, 348 (1986); *Hudson* v. *Palmer*, 468 U. S. 517, 532–534 (1984); *Parratt* v. *Taylor*, 451 U. S. 527, 541 (1981). I agree with respondents that this is the appropriate, and appropriately limited, federal constitutional inquiry in this case.

Because I conclude that, under our precedents, a prisoner seeking to establish that he has been subjected to cruel and unusual punishment must always show that he has suffered a serious injury, I would affirm the judgment of the Fifth Circuit.

---

*White* v. *Phelps*, 387 So. 2d 1188 (La. Ct. App. 1st Cir. 1980); *Hampton* v. *State*, 361 So. 2d 257, 258 (La. Ct. App. 1st Cir. 1978); *Davis* v. *State*, 356 So. 2d 452, 454 (La. Ct. App. 1st Cir. 1977); *Betsch* v. *State*, 353 So. 2d [358], 359 (La. Ct. App. 1st Cir. 1977), *writ refused*, 354 So. 2d 1389 (La. 1978); *Williams* v. *State*, 351 So. 2d 1273 (La. Ct. App. 1st Cir. 1977); *Jones* v. *State*, 346 So. 2d 807, 808 (La. Ct. App. 1st Cir.), *writ refused*, 350 So. 2d 671 (La. 1977); *Walker* v. *State*, 346 So. 2d 794, 796 (La. Ct. App. 1st Cir.), *writ denied*, 349 So. 2d 879 (La. 1977); *Raney* v. *State*, 322 So. 2d 890 (La. Ct. App. 1st Cir. 1975); and *Bay* v. *Maggio*, 417 So. 2d 1386 (La. Ct. App. 1st Cir. 1982)." Brief for Respondents 42–43, n. 38.

Petitioner has not disputed the existence or adequacy of state-law remedies for his injuries.