HELENE N. WHITE, Circuit Judge
(dissenting).
I respectfully dissent. I agree that it is appropriate for the court to consider a video of the events when ruling on a motion for summary judgment, and to discount any allegations clearly rebutted by the video. I do not, however, agree that the video in this case clearly undermines Griffin’s account leaving no genuine issue of material fact. I would reverse and remand for further proceedings.
In my view, the videotape does not “blatantly contradict! ]” Griffin’s version of the facts “so that no reasonable jury could believe” her, and therefore summary judgment was not appropriate. Scott v. Harris, 550 U.S. 372, 380-81, 127 S.Ct. 1769, 167 L.Ed.2d 686 (2007). Under Scott, in determining whether there are material factual disputes, we must accept the facts as depicted in the video, even when contrary to a party’s sworn testimony. However, facts that are not clearly portrayed in the video remain entitled to an interpretation most favorable to the non-moving party. Morales v. American Honda Motor Co., Inc., 71 F.3d 531, 535 (6th Cir. 1995); see Scott, 550 U.S. at 380, 127 S.Ct. 1769 (facts must be viewed in a light most favorable to non-moving party when there is a “genuine dispute as to those facts”). Accepting all events portrayed in the video as true, there remains a material factual dispute as to whether Hardrick performed the takedown maneuver maliciously and sadistically to cause harm, rather than “in a good-faith effort to maintain or restore discipline.” Hudson v. McMillian, 503 U.S. 1, 6, 112 S.Ct. 995, 117 L.Ed.2d 156 (1992).
In Scott, the Court found that the plaintiffs claim that he was driving in a “cautious and controlled” fashion was clearly rebutted by the video that showed him traveling upwards of 85 miles per hour on narrow roads, swerving around cars, crossing the double-yellow line, forcing other cars traveling in both directions to the side of the road, running multiple red lights, and driving in the left-turn-only lane. Id. at 379-80, 127 S.Ct. 1769. The video here, however, does not definitively establish either what transpired prior to Hardrick executing the takedown maneuver, or that Hardrick did not act maliciously or wantonly in executing the maneuver.
Griffin contends that Hardrick told her “she was going to live in hell” and that she “was his bitch.” The video, which has no accompanying audio, does not contradict this allegation. The district court’s perception of the “calmness” of Hardrick’s demeanor is not incompatible with his having made these statements to Griffin, and thus, at this point in the litigation, we should assume he did. As the district court recognized, such statements “could indicate a ‘sadistic’ or ‘malicious’ state of mind at the time of the physical encounter.” See Wilson v. Seiter, 501 U.S. 294, *958 302, 111 S.Ct. 2321, 115 L.Ed.2d 271 (1991).
The majority concludes that “[m]ost importantly, the video establishes that Griffin was clearly struggling against both Hardrick and Rutledge before Hardrick employed the leg-sweep maneuver.” I do not agree that the video shows that Griffin was struggling with the officers to an extent that no reasonable juror could conclude that Hardrick acted wantonly and maliciously in performing the takedown. The video does show that Griffin began walking away from Hardrick, and that she resisted his initial attempt to grab her arm. Griffin, however, contends that she did so because her arms were already sore and bruised, and that Hardrick’s grip caused her additional pain. Indeed, Hardrick concedes that Griffin told him to “watch [her] arms.”
The video is ambiguous, however, as to whether Griffin was continuing to struggle at the time of the takedown and, even if she was, whether Hardrick could plausibly have thought a takedown necessary under the circumstances. In the approximately eight second span from when Rutledge took hold of Griffin’s other arm until Hardrick performed the takedown maneuver, Griffin can be seen continuing to talk with the two officers with no aggressive physical movement. Hardrick and Rutledge then pull her forward forcefully, sufficient to make her stumble. It appears that Griffin has almost regained her balance when Hardrick performs the takedown, and she continues to be restrained at both arms by the officers. Further, no other inmates were in the area, and a third corrections officer stood nearby observing and ready to intervene. See Seiter, 501 U.S. at 303, 111 S.Ct. 2321 (whether conduct “can be characterized as ‘wanton’ depends upon the constraints facing the official ”) (emphasis in original).
To be sure, prison officials are entitled to “wide-ranging deference in the adoption and execution of policies and practices that in their judgment are needed to preserve internal order.” Whitley v. Albers, 475 U.S. 312, 321-22, 106 S.Ct. 1078, 89 L.Ed.2d 251 (1986). But such deference “does not insulate from review actions taken in bad faith and for no legitimate purpose.” Id. at 322, 106 S.Ct. 1078. A jury viewing the events portrayed in the video in light of the statements Griffin attributes to Hardrick could reasonably conclude that Hardrick could not plausibly have thought that the use of the takedown maneuver, although executed properly, was necessary, and that, in fact, he performed it solely to inflict pain, even if not of the degree that ultimately occurred.