NONPRECEDENTIAL DISPOSITION
To be cited only in accordance with
Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Submitted September 26, 2012
Decided September 26, 2012

**Before**

WILLIAM J. BAUER, *Circuit Judge*

MICHAEL S. KANNE, *Circuit Judge*

JOHN DANIEL TINDER, *Circuit Judge*

No. 12-1793

| | |
|---|---|
| RAMIAH ABJIAH WHITESIDE,<br>*Plaintiff-Appellant,* | Appeal from the United States District<br>Court for the Eastern District of Wisconsin. |
| *v.* | No. 10-C-725 |
| WILLIAM POLLARD, et al.,<br>*Defendants-Appellees.* | William C. Griesbach,<br>*Judge.* |

**O R D E R**

Ramiah Whiteside, a Wisconsin inmate, brought this action under 42 U.S.C. § 1983, claiming that the former Secretary of the Wisconsin Department of Corrections and various officials at the Green Bay Correctional Institution violated the Eighth Amendment by (1) placing him in a cell with Willie Simpson, an HIV-positive cellmate who threatened to attack him, and (2) refusing to provide him with disinfectant and protective gear to remove Simpson's blood from their shared sink. The district court granted the defendants' motion for summary judgment, and we affirm.

Whiteside's complaint alleged that prison officials failed to protect him from the psychological harm he suffered when Simpson threatened to attack him after they became cellmates, and when on two occasions he used Simpson's shaving razor by mistake, causing him to fear that he had contracted HIV. He says that the defendants refused his request to

have Simpson moved to a different cell, even after expressing his fear of Simpson informally to the warden and several guards. The complaint further alleged that the defendants were deliberately indifferent to the unsanitary conditions in Whiteside's cell—Whiteside feared that he might contract HIV from the blood that Simpson left in the sink after shaving or brushing his teeth. Whiteside alleged that the prison's medical staff ignored his requests for disinfectant to remove the blood, responding only that decontaminating the sink was not Whiteside's job.

Shortly after filing suit, Whiteside submitted another grievance with the prison charging the defendants with needlessly exposing him to a risk of infection by denying him disinfectant. The grievance was denied as untimely, having been filed several months after Whiteside and Simpson were reassigned to new cells (Wisconsin prison regulations require prisoners to file grievances within 14 days of discovering a problem. WIS. ADMIN. CODE DOC § 310.09(6)).

At screening, 42 U.S.C. § 1997(a), the district court ruled that the complaint stated a failure-to-protect claim and allowed the case to proceed to summary judgment. The court, however, did not explicitly address Whiteside's unsanitary-conditions claim.

After discovery, at which Whiteside submitted copies of his prison grievances and his messages to the health care staff, as well as an affidavit documenting the allegations in his complaint, the defendants moved for summary judgment on the failure-to-protect claim. The district court granted the motion, concluding that the Eighth Amendment does not require prison officials to protect prisoners from purely psychological harm, and that Whiteside had failed to demonstrate any physical harm.

Whiteside filed a motion to reconsider, asserting that the court had not addressed the unsanitary-conditions claim in its order granting summary judgment. The defendants responded that the unsanitary-conditions claim had not been exhausted, as required by 42 U.S.C. § 1997e(a), because only the untimely grievance that Whiteside filed after initiating his suit had ever mentioned the problem of blood in the sink or the absence of disinfectant. Whiteside countered that he filed that grievance as soon as he learned about the need for disinfectant to clean the sink.

The district court denied the motion to reconsider, agreeing with defendant's argument that Whiteside's post-suit grievance had been untimely. The court also maintained that Whiteside had misunderstood the screening order—Whiteside's unsanitary-conditions claim had been dismissed at screening, not simply ignored.

On appeal, Whiteside first rehashes his failure-to-protect claim, insisting a disputed fact existed about whether Simpson was HIV-positive and whether Whiteside was at risk of

contracting it. But Whiteside's failure-to-protect claim loses even if both of those facts were resolved in his favor. Summary judgment is the "put up or shut up moment" of litigation, *see Springer v. Durflinger*, 518 F.3d 479, 484 (7th Cir. 2008), and Whiteside had not put forward any evidence that the defendants celled him with Simpson out of malice, which Whiteside needed to demonstrate in order to establish a failure-to-protect claim. *See Babcock v. White*, 102 F.3d 267, 270 (7th Cir. 1996); *see also Hudson v. McMillian*, 503 U.S. 1, 9 (1992) (noting that evidence of "significant injury" is unnecessary when prison officials "maliciously and sadistically use force to cause harm").

Whiteside next argues that he did exhaust his prison remedies regarding the unsanitary-conditions claim through an earlier grievance in which he noted that his cellmate was HIV-positive and sought reassignment for unspecified health and safety concerns; in his view "[a]ny reasonable person would have wondered why or how [his] health and safety were in such jeopardy." But "unless the prisoner completes the administrative process by following the rules the state has established for that process, exhaustion has not occurred," *Pozo v. McCaughtry*, 286 F.3d 1022, 1023 (7th Cir. 2002), and the administrative process here required Whiteside to "clearly identify the issue" he was complaining about, *see* WIS. ADMIN. CODE DOC § 310.09(1)(e). A vague allusion to health and safety risks was insufficient to put prison officials on notice that they were violating Whiteside's civil rights by denying him cleaning supplies. Whiteside's earlier grievance did not properly exhaust the prison's remedies.

Whiteside argues, alternatively, that the grievance he filed five months after Simpson's assignment to a new cell exhausted the prison's remedies and repeats his earlier contention that the grievance was timely because he filed it immediately upon learning that he should use disinfectant to remove Simpson's blood from the sink. But this argument is belied by the requests for disinfectant he sent to the medical staff months earlier, when Simpson was still his cellmate. Because Whiteside did not exhaust his administrative remedies, the district court properly dismissed his unsanitary-conditions claim. *See Woodford v. Ngo*, 548 U.S. 81, 90–91 (2006).

AFFIRMED.