821 F.Supp. 1291 (1993)
Bruce CUMMINGS, Plaintiff,
v.
Paul D. CASPARI, et al., Defendants.
No. 91-2017C(6).
United States District Court, E.D. Missouri, E.D.
May 14, 1993.
Bruce Cummings, pro se.
John J. Pawloski, Associate, Sandberg and Phoenix, St. Louis, MO, for defendants.

MEMORANDUM
GUNN, District Judge.
Bruce Cummings, a Missouri inmate formerly incarcerated at the Missouri Eastern Correctional Center (MECC), brings this pro se action under 42 U.S.C. § 1983 alleging that, on June 20 and 21, 1991, defendants, MECC officials, violated his constitutional *1292 rights by using excessive force against him, refusing him medical care and taking his property. Plaintiff seeks declaratory and injunctive relief, and damages. The matter is before the Court on defendants' motion for summary judgment. Also before the Court are plaintiff's renewed motions for appointment of counsel and the parties' various discovery motions. For the reasons stated below, defendants' motion for summary judgment will be granted. Plaintiff's motions for appointment of counsel will be denied and the parties' pending discovery motions will be denied as moot.

BACKGROUND
On June 20, 1991, plaintiff was being held in the MECC administrative segregation unit after receiving a conduct violation. Plaintiff began kicking on his cell door and was ordered to stop. After plaintiff refused to obey the order and continued kicking the door, he was sprayed with mace. Thereafter, at approximately 5:00 p.m., defendants assembled a movement team comprised of five guards to move plaintiff to the isolation room in the MECC medical area. Plaintiff refused to lay on the floor and allow himself to be handcuffed. The movement team entered plaintiff's cell, at which time plaintiff rushed toward the door. The movement team pinned plaintiff to the floor, placed handcuffs and leg restraints on him and carried him to the isolation room.
Plaintiff was examined by LPN Robin Vondera at approximately 5:15 p.m. According to the notes from her examination, nurse Vondera observed plaintiff's condition to be normal except for reddened and watery eyes and coughing. He was later returned to his cell.
Plaintiff alleges that, in subduing him, the movement team caused injuries to his head and body. He further alleges that nurse Vondera failed to diagnose or treat his head injury and that it continues to cause him severe headaches.
On the morning of June 21, 1991, plaintiff requested medical services for treatment of the alleged head injury as well as alleged injuries to his hands and legs. Plaintiff again began kicking on his cell door and continued to do so despite orders to stop. He also flooded his cell. Defendants decided to move plaintiff to another cell and assembled a five-member movement team. After plaintiff refused to cooperate by allowing himself to be handcuffed, the movement team entered his cell. Plaintiff again rushed toward the door and was forcibly subdued. The movement team pinned plaintiff to the ground, handcuffed him, removed his boots, placed leg restraints on him and moved him to another cell. A short time later, plaintiff was observed by nurse Brenda Paige. Nurse Paige observed that plaintiff had a contusion in the left eyebrow/left temporal area, that he was alert and orientated and that he was in no acute distress. She prescribed an ice pack for the injury to the left side of his head.

ANALYSIS
Initially, the Court notes that plaintiff is no longer incarcerated at MECC. To the extent his claims seek injunctive relief, the Court will dismiss them as moot because there is no reasonable expectation that plaintiff will be subjected to the same action again. See Vosburg v. Solem, 845 F.2d 763, 770 (8th Cir.), cert. denied, 488 U.S. 928, 109 S.Ct. 313, 102 L.Ed.2d 332 (1988).

Excessive Use of Force
Defendants move for summary judgment on plaintiff's Eighth Amendment excessive force claim on grounds that the physical force used to move plaintiff within the prison was both reasonable and constitutional under the exigent circumstances. In support of their motion, defendants rely on a "use of force" videotape which MECC officials recorded on June 20 and 21, 1991, internal prison memoranda regarding defendants' use of force, affidavits by the officers who comprised the movement teams and plaintiff's medical records.
In response, plaintiff argues that the injuries he received on the dates in question were inflicted willfully and maliciously to punish him for wanting to live with a roommate of his own choice, for filing legal actions against defendants and for requesting medical *1293 care. He alleges that he suffered a head injury which continues to cause him severe headaches. Additionally, plaintiff complains of injuries to his wrists and legs as a result of being forced to wear handcuffs and leg restraints and the discomforts resulting from being sprayed with chemical mace. In support of his opposition to the motion for summary judgment, plaintiff relies on his own affidavit stating generally that "defendants used excessive and unnecessary force on me." Plaintiff also relies on an affidavit by inmate Billy McGinnis stating that after the movement team entered plaintiff's cell on June 20, 1991, he heard what sounded like fighting and it appeared that plaintiff was beaten unconscious, and an affidavit by inmate William Garrison stating that he overheard plaintiff ask two officers for medical treatment of migraine headaches from being maced and beaten the day before. Plaintiff also argues that the complete absence of any notations in his medical records regarding some of his injuries demonstrates that the records are not reliable evidence.
In Hudson v. McMillian, ___ U.S. ___, 112 S.Ct. 995, 117 L.Ed.2d 156 (1992) (Hudson), the Supreme Court held:
[O]fficials confronted with a prison disturbance must balance the threat unrest poses to inmates, prison workers, administrators, and visitors against the harm inmates may suffer if guards use force. Despite the weight of these competing concerns, corrections officials must make their decisions "in haste, under pressure, and frequently without the luxury of a second chance." ... "[T]he question whether the measure taken inflicted unnecessary and wanton pain and suffering ultimately turns on `whether force was applied in a good faith effort to maintain or restore discipline or maliciously and sadistically for the very purpose of causing harm.'"
Id. at ___, 112 S.Ct. at 998 (citations omitted). Although not dispositive, the extent of injury suffered by an inmate may suggest "whether the use of force could plausibly have been thought necessary." Id. at ___, 112 S.Ct. at 999. Giving appropriate consideration to the evidence on record[1] and the extent of plaintiff's injuries, the Court finds that there is no genuine dispute that the force defendants used to move plaintiff on June 20 and 21, 1991 was applied in a good faith effort to restore discipline and not maliciously or sadistically for the purpose of causing harm, even assuming the full extent of injuries alleged by plaintiff. Accordingly, defendants are entitled to judgment as a matter of law on plaintiff's Eighth Amendment claim of excessive force.

Denial of Medical Care
Defendants also move for summary judgment on plaintiff's claim that he was denied medical care in violation of his Eighth Amendment rights. Defendants argue that it cannot be genuinely disputed that plaintiff lacked any serious medical needs and, in any case, defendants were not deliberately indifferent to the medical needs he had. See Estelle v. Gamble, 429 U.S. 97, 103-06, 97 S.Ct. 285, 290-92, 50 L.Ed.2d 251 (1976) (Eighth Amendment violation requires that officials were deliberately indifferent to serious medical needs).
The evidence in this case shows that plaintiff was given medical attention following each of the two incidents on June 20 and June 21, 1991. Plaintiff does not dispute that on June 20, 1991 his vital signs, including blood pressure and pulse, were taken by nurse Vondera. The evidence also demonstrates *1294 that nurse Vondera noted the apparent effects of the mace, including reddened and watery eyes and coughing.[2] Plaintiff also does not dispute that on June 21, 1991 he was seen by nurse Paige, who prescribed an ice pack for a contusion on the left side of his head. Nurse Paige also noted that plaintiff was otherwise alert and orientated, and that he was in no acute distress. Plaintiff complains that the examinations conducted by nurses Vondera and Paige were inadequate because nurse Vondera apparently did not diagnose and treat his head injury and nurse Paige did not take his vital signs.
Even assuming the full extent of injuries alleged by plaintiff, the Court finds that they did not present "serious" medical needs within the meaning of the Eighth Amendment standard. Moreover, in view of the undisputed facts, the actions taken by defendants in attending to plaintiff's medical needs were well within reasonable standards of medical care under the circumstances of this case and do not constitute deliberate indifference. No genuine issue of material fact exists on this claim.

Remaining Claims
Finally, plaintiff generally claims that defendants unlawfully took property from him, that they threatened and punished him for filing legal actions and that they denied him meaningful access to the courts. Although his pro se complaint must be liberally construed, plaintiff is still required to state specific facts supporting these general and conclusory allegations. Martin v. Sargent, 780 F.2d 1334, 1337 (8th Cir.1985). Since plaintiff has failed to allege any specific supporting facts, defendants are entitled to summary judgment on these remaining claims.
NOTES
[1] In support of their motion, defendants rely on the "use of force" videotape they recorded on June 20 and 21, 1991 purportedly depicting the actions of the movement teams. Plaintiff was given an opportunity to view the videotape and to supplement his opposition to the motion for summary judgment to include his objections to the videotape. After declining to view the videotape on grounds that the viewing location offered by defendants was unsatisfactory, plaintiff filed objections stating upon information and belief that the videotape failed to depict all the relevant events and arguing that it is not probative of defendants' intent. There is, however, no genuine dispute that the inmate on the videotape is plaintiff and the events depicted occurred on June 20 and 21, 1991. The Court therefore relies on the videotape to the extent that it shows that on both dates in question plaintiff was creating a disturbance in his cell, that he refused to allow himself to be restrained peaceably and that he rushed toward his cell door upon the movement team's entry into his cell.
[2] In her notations, nurse Vondera also stated that plaintiff attempted to pinch her while she was examining him.