15 F.3d 1085
NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
 Douglas A. HIRANO, Plaintiff-Appellee-Cross-Appellant.
v.
Glenn KAKUDA, Defendant-Appellant-Cross-Appellee.
 Nos. 92-15076, 92-15091, 92-15854 and 92-16398.
 United States Court of Appeals, Ninth Circuit.
 Jan. 18, 1994.
 
 Before: BROWNING, NORRIS, and REINHARDT, Circuit Judges.
 
 
 1
 MEMORANDUM*
 
 
 2
 Plaintiff Hirano is an inmate at the Halawa Medium Security Correctional Facility in Hawaii. Hirano's section 1983 action arises from an incident on October 28, 1989. Following trial, the district court entered judgment in favor of Hirano against defendant Kakuda, a correctional officer.[1]
 
 
 3
 On October 18, 1989, Kakuda confiscated an expandable file folder from Hirano in the prison law library. Hirano filed a grievance against Kakuda for wrongfully confiscating the folder and for failing to give Hirano a receipt for it. Believing that Hirano had stretched the truth by not reporting in his grievance that the folder was an accordion folder (which could be used to hide a weapon), Kakuda confronted Hirano on October 28, 1989. While Hirano was entering the visiting area to see his mother, Kakuda asked him about the grievance. Hirano responded, "what grievance?" Kakuda was not pleased. Later, as Hirano left the visiting area, Kakuda ordered him to wait in a small holding room.
 
 
 4
 Once inside the room, Kakuda told Hirano that he didn't like the inmate's attitude. Loud argument ensued. At some point, Hirano tried to leave the room, but Kakuda placed a chair between himself and the inmate. Kakuda punctuated several rhetorical questions to Hirano by hitting the inmate's knees and shins with the chair. At another point, Kakuda raised the chair and brought it down onto Hirano's toe. Hirano was wearing slippers, and this act caused an abrasion. Finally, Kakuda pinned Hirano against the wall with the chair. Kakuda swore repeatedly at Hirano, and threatened him with trouble from inmates and correctional officers if Hirano did not change his attitude.
 
 
 5
 Hirano suffered no permanent physical injuries. He was treated for injuries to his toe, foot, and knees, but some of these injuries were incurred in an earlier basketball game.
 
 
 6
 Hirano filed his complaint on November 17, 1989. He proceeded pro se until April 1991, when two attorneys took over his representation. After a bench trial, the district court ruled in Hirano's favor on the October 28 incident and awarded him $100 in damages. The court also ruled that Hirano was entitled to reasonable attorneys' fees.
 
 
 7
 After considering a motion for fees and costs, the district court awarded total fees and costs in the amount of $56,031.40. The district court arrived at this figure by: 1) deducting $5000 from requested fees to account for time spent seeking continuances and unsuccessfully moving to amend the complaint, 2) applying an across-the-board 25 percent downward adjustment of fees, 3) reducing by half one attorney's fees for replying to Kakuda's opposition to the fees motion, and 4) reducing requested photocopying costs by 60 percent.
 
 I. Kakuda's Challenge to Liability Finding
 
 8
 Kakuda argues that we should reverse and remand in light of Hudson v. McMillian, 112 S.Ct. 995 (1992), decided after the trial in this case. Specifically, Kakuda contends that his application of physical force was justified to prevent Hirano from leaving the room during Kakuda's confrontation with the prisoner. We reject Kakuda's argument. Viewing, as the district court apparently did, the entire episode as the challenged "cruel and unusual punishment," the district court properly applied the standard of "unnecessary and wanton infliction of pain" reiterated in Hudson. See 112 S.Ct. at 999. The district court correctly refused to isolate Kakuda's blows with the chair from the unjustified confinement and confrontation of Hirano in the holding room. Finally, the district court's findings of fact do not support Kakuda's contention that his confrontation with Hirano was a justified "investigation" of Hirano's grievance. The district court's conclusion that Kakuda's attempt to "chastise" Hirano constituted an episode of "physical and emotional harassment" without "any penological justification" supports the judgment in Hirano's favor.
 
 
 9
 Kakuda also argues that any unauthorized use of force was de minimis and was not constitutionally cognizable. See Hudson, 112 S.Ct. at 1000. Kakuda focuses inappropriately on how minor Hirano's injuries were, rather than whether the force itself was "de minimis." Considering all the force involved in the confrontation with Hirano, we conclude that the district court's findings cannot support application of the de minimis force exception. This was not simply an excessive on-the-spot response to a prisoner's conduct. Rather, it was a planned session of intimidation and abuse. The district court found that, in addition to holding Hirano in the room, and raising and lowering the chair onto Hirano's foot, "Kakuda repeated the question 'you think you fucking hot shit?' several times, each time hitting Hirano's knees and shins with the chair." "Ultimately, Kakuda pinned [Hirano] against the wall by holding the chair against Hirano's shins." Regardless of the extent of injury, accentuating hostile rhetorical interrogation with blows to the knees, slamming a chair onto the toe of a prisoner wearing slippers, and pinning a prisoner to the wall with a chair cannot fairly be termed "de minimis" force.
 
 
 10
 Finally, relying on Johnson v. Glick, 481 F.2d 1029, 1032 (2d Cir.1973), Kakuda contends that his confrontation with Hirano was an "isolated attack" not constituting "punishment" under the Eighth Amendment. We rejected a similar argument in McRorie v. Shimoda, 795 F.2d 780, 782-84 (9th Cir.1986). The Supreme Court's refusal to take a position on the existence of such an exception in Hudson does not change the fact that no such exception is recognized in this Circuit.
 
 II. Qualified Immunity
 
 11
 Kakuda contends that he is entitled to qualified immunity. We disagree. Kakuda physically and emotionally abused Hirano without any justification. No reasonable prison official could conclude that such a use of force was lawful. Act Up!/Portland v. Bagley, 988 F.2d 868, 873 (9th Cir.1993).
 
 
 12
 Kakuda also contends that the lack of a significant injury requirement under the Eighth Amendment was not clearly established in October 1989. In support, Kakuda identifies the existence of a circuit split as well as the fact that two justices dissented from the Supreme Court's decision in Hudson rejecting a significant injury requirement. Binding precedent mandates rejection of Kakuda's argument. In Felix v. McCarthy, we held that it was clearly established, for purposes of a 1985 incident, that "it is not the degree of injury which makes out a violation of the eighth amendment." 939 F.2d 699, 702 (9th Cir.1991). Thus, we cannot now hold that the same proposition was not clearly established in 1989.
 
 
 13
 Finally, Kakuda contends that it was not clearly established that isolated attacks may violate the Eighth Amendment. As noted above, McRorie established for this circuit that such attacks may constitute violations, and contrary indications in Johnson v. Glick are both equivocal (because the Johnson court found the attacks actionable under due process) and of highly questionable contemporary validity.
 
 III. Damages
 
 14
 Hirano contends that the district court's award of $100 in damages was clearly erroneous. See Lum v. Honolulu, 963 F.2d 1167, 1170 (9th Cir.1992) (computation of damages reviewed for clear error). Hirano argues that his showing of emotional distress required a greater award.
 
 
 15
 Hirano's physical injury consisted primarily of a painful abrasion on his toe. In addition, he had injuries to his foot and knees, but the district court found, on the basis of Hirano's own testimony, that some of these injuries were independently caused during an earlier basketball game. Hirano's emotional injuries, consisting primarily of fear and humiliation during his encounter with Kakuda, were, like his physical injuries, not permanent.
 
 
 16
 The district court's findings fail to explain how it arrived at the amount of $100 in damages. The court simply sets forth that amount without indicating how it valued Hirano's physical injuries or his emotional or psychological injuries. The record suggests that the amount is inadequate. In view of the above, we remand for reconsideration of the amount of damages and an explanation for the amount of the final award.
 
 IV. Attorney's Fees
 
 17
 Kakuda also challenges the district court's award of attorney's fees. In supplemental briefing, Kakuda conceded, as he must, that Hirano is a "prevailing party" under the Supreme Court's recent decision in Farrar v. Hobby, 113 S.Ct. 566 (1992). Nonetheless, Kakuda contends that an award of fees is inappropriate in light of Hirano's $100 recovery. Wholly aside from our view that the damage award appears to be inadequate, we conclude that the award of fees is appropriate. We do not believe that any of Kakuda's argued "special circumstances" warrant a denial of fees. Finally, we are not convinced by any of Kakuda's arguments that the district court abused its discretion in setting the amount of fees.
 
 
 18
 We affirm judgment in favor of Hirano, vacate and remand the damages award, and affirm the award of attorney's fees.
 
 
 19
 AFFIRMED IN PART, VACATED IN PART, AND REMANDED.
 
 
 
 *
 This disposition is not appropriate for publication and may not be cited to or by the Courts of this Circuit except as provided by Ninth Circuit Rule 36-3
 
 
 [1]
 Hirano's complaint also sought relief for a separate incident on October 30, 1989, involving Hirano, Kakuda, and two other officers. The district court found no liability for this incident; Hirano does not appeal that decision