**Kevin R. DRUM, Plaintiff,**

v.

**Detective Beverly BRIMER of the Wichita Police Department, et al., Defendants.**

**No. 97–1015–JTM.**

United States District Court, D. Kansas.

Aug. 19, 1998.

Kevin R. Drum, Lansing, KS, pro se.

Blaise R. Plummer, City of Wichita Law Dept., Wichita, KS, for Defendants Beverly Breimer, T S Spencer, J R Wheatridge, Jeffrey Swanson, Blaise Plummer, City of Wichita.

Ed L. Randels, Sedgwick County Legal Dept., Wichita, KS, for Defendant Robert Holland.

## MEMORANDUM ORDER

MARTEN, District Judge.

Currently before the court are several outstanding motions relating to discovery and appointment of counsel, and proposals for and objections to pretrial orders in this action for alleged excessive force and illegal detention by officers of the Wichita Police Department and the Sedgwick County Sheriff's Office. Plaintiff Kevin Drum has moved for partial summary judgment. In addition, both the city and county defendants have filed separate motions for summary judgment. The court finds that all discovery and other motions may be resolved, and that summary judgment should issue in favor of defendants.

### 1. General Motions

The various motions to compel of plaintiff Drum (Dkt. Nos. 74, 76, and 109) will be denied for the same reasons identified in the court's previous order addressing the

motions before the court. The plaintiff may disagree with the answers received in discovery, but this is not a basis for granting a motion to compel a particular answer which the plaintiff may desire. In addition, the various objections raised by defendants, such as to relevance, are correct. It may be noted that in several responses the defendants provide objections to the request as stated, but still proceed to provide general information on a given topic. Plaintiff's motions for production of various documents (Dkt. Nos. 84.1, 87, and 108) are without substantial merit and are denied. The defendants' related motions to quash (Dkt. Nos. 99 and 111) are hereby granted.

The various motions for assistance of counsel filed by Drum (Dkt. Nos. 77, 83, and 112) do not state any rationale for appointment of counsel which was not previously considered and rejected in the court's previous order on the subject. The considerations weighing against the granting of appointment of civil counsel were stated in one of the cases cited by plaintiff in support of one of his motions:

For many reasons courts should not grant such applications indiscriminately. Volunteer lawyer time is a precious commodity. Courts are given a major role in its distribution. Because this resource is available in only limited quantity, every assignment of a volunteer lawyer to an undeserving client deprives society of a volunteer lawyer available for a deserving cause. We cannot afford that waste.

Available volunteer-lawyer time should not be allocated arbitrarily, or on the basis of the aggressiveness and tenacity of the claimant. The phrase *pro bono publico* suggests meaningfully that distribution of this resource should be made with reference to public benefit. The ancient adage about "the squeaky wheel" may well be an accurate statement of a law of nature; it should not be adopted also as a law of prescription.

*Cooper v. A. Sargenti Co.*, 877 F.2d 170, 172 (2nd Cir.1989).

Finally, the court denies plaintiff's motions for continuance (Dkt. Nos. 80 and 84.2) and defendant Brimer's motion for leave to file discovery responses (Dkt. No. 81). The court also denies as lacking any substantial justification plaintiff's various motions to supplement his summary judgment responses (Dkt.Nos.120, 122, 127). The court has recognized plaintiff's status as an incarcerated person, and has accordingly acted to carefully preserve his right to a fair trial through the application of generous deadlines or extensions of time for the completion of responsive pleadings. The plaintiff, however, has failed to demonstrate any credible rationale for the attempt to respond to defendants' summary judgment motions by installment. Accordingly, the requests to supplement are denied.

### 2. Plaintiff's Motion for Summary Judgment

Summary judgment is proper where the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show there is no genuine issue as to any material fact, and that the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). In considering a motion for summary judgment, the court must examine all evidence in a light most favorable to the opposing party. *McKenzie v. Mercy Hospital*, 854 F.2d 365, 367 (10th Cir.1988). The party moving for summary judgment must demonstrate its entitlement to summary judgment beyond a reasonable doubt. *Ellis v. El Paso Natural Gas Co.*, 754 F.2d 884, 885 (10th Cir.1985). The moving party need not disprove plaintiff's claim; it need only establish that the factual allegations have no legal significance. *Dayton Hudson Corp. v. Macerich Real Estate Co.*, 812 F.2d 1319, 1323 (10th Cir.1987).

In resisting a motion for summary judgment, the opposing party may not rely upon mere allegations or denials contained in its pleadings or briefs. Rather, the nonmoving party must come forward with specific facts showing the presence of a genuine issue of material fact for trial and significant probative evidence supporting the allegation. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). Once the moving party has carried its burden under Rule 56(c), the party opposing summary judgment must do more than

simply show there is some metaphysical doubt as to the material facts. "In the language of the Rule, the nonmoving party must come forward with 'specific facts showing that there is a *genuine issue for trial.*'" *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986) (quoting Fed. R.Civ.P. 56(e)) (emphasis in *Matsushita*). One of the principal purposes of the summary judgment rule is to isolate and dispose of factually unsupported claims or defenses, and the rule should be interpreted in a way that allows it to accomplish this purpose. *Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

■ The plaintiff's motion for partial summary judgment against defendants Brimer and Spencer should also be denied. The only justification for the motion is plaintiff's continued reliance on the allegedly preclusive effect of the state court's decision to suppress the evidence against him. As the court stated in its previous order, the findings made in the state criminal action are not binding in the present civil action, for the independent reasons that the present civil action involves different parties and a different standard of proof. The alleged constitutional deprivations must be established independently by Drum. And this plaintiff has failed to do.

### 3. The City Defendants

■ The uncontroverted facts submitted in connection with the City defendants' motion establish that Detective Brimer, Detective Whittredge, Sergeant Spencer, and Officer Swanson were at all relevant times certified law enforcement officers of the State of Kansas and duly commissioned police officers of the Wichita City Police Department. On February 1, 1995, Sergeant Spencer, assigned to the department's special investigations division, received information from a confidential informant that Kevin Drum would be picking up methamphetamine from a trailer house in Wichita, Kansas. The informant stated that Drum would be leaving in a short time from his residence to go to the Patry trailer home to buy an ounce of methamphetamine. Spenc-er made a telephone call by which he was able to determine Drum had left his house within two minutes of the call.

Spencer told Detectives Brimer and Whittredge of the tip, which they considered to be reliable. Brimer and Whittredge were told Drum would be driving a vehicle owned by Crystal Glendenning, 3148 S. Euclid, Wichita, Kansas. They went to the area of the Patry trailer, which they placed under surveillance. Drum arrived at the trailer in a white van and went inside. A license check on the van showed it was registered to a Crystal Glendenning, a known associate of Drum.

Three white males came out of the trailer, and went inside a shed on the west side of the trailer. The three males emerged, one carrying a box which he took to the van. A second man went to a red Honda, while a third went back to the trailer. Spencer and Whittredge followed the Honda as it left. The Honda was later stopped and its driver taken into custody for driving on a suspended license.

Brimer and Swanson followed the van and observed Drum driving in an evasive manner and that he ran a stop sign. Drum and the van were stopped by Brimer and Swanson near 1108 W. 31st South. Drum was held for about ten minutes, during which time he was issued two traffic citations.

During the stop, Brimer asked Drum to get out of the vehicle. Drum complied, and Brimer asked if they could check him for weapons, and he agreed to a pat down. During the pat down, Swanson encountered hard objects in Drum's pockets and he removed a woman's compact and a package of mascara. Brimer asked Drum if they could search the rest of his pockets and he agreed to be searched.

Brimer told Drum the officers had reason to believe there were narcotics in the van he was driving and asked for permission to search the van. Drum denied permission, stating the van was not his. Brimer told Drum he was free to go and that he was not under arrest, but that the officers would be holding the van for a drug-dog search of the outside of the van.

An additional search of Drum's person was done with his consent. Swanson had Drum accompany him to the police car, where he explained the traffic charges. Drum stated he was going to leave if he wasn't under arrest. Detective Brimer allowed Drum to walk away from the scene.

A drug dog was brought to the van, which gave a positive alert for narcotics upon sniffing at two locations near the outside of the van. Officer Swanson was told by his supervisors to locate Drum, and Swanson caught up with Drum walking on the shoulder of the road several blocks from the scene of the initial stop. Drum complied with Swanson's order to get in the patrol car and wait until a decision could be made about what to do with the van. After a delay of some period of time, Drum became tired of waiting, and Swanson drove him to the vicinity of his residence and let him go.

While Whittredge, Brimer, and Spencer were determining what to do with the van, Spencer saw a large town car pull up at the scene. He later learned Drum had returned to the scene and wanted to know what was going to happen to the vehicle. Drum was told the van was to be impounded. The van was later subjected to an inventory search with the approval of Assistant District Attorney Doug Roth. .

The second incident underlying the present action arose when Sergeant Spencer received information from a reliable confidential informant that Kevin Drum should have a quantity of methamphetamine in his possession on March 15, 1995, and that he would be making contact sometime that day with Crystal Glendenning, 3128 S. Euclid, Wichita, Kansas. Brimer and Spencer set up surveillance on the residence, where they saw a silver pickup truck registered to Gregg E. Chasak arrive.

Brimer and Spencer followed the vehicle as it left the residence. Brimer saw that Drum was a passenger in the vehicle. When the vehicle made a U-turn in front of the officers, Spencer stopped the vehicle.

Spencer told the driver, who identified himself as Greg Chasak, that the officers suspected there were narcotics in the truck.

Spencer told Chasak he did not think the narcotics were Chasak's, and asked for consent to search the vehicle. Chasak initially denied consent to search the vehicle, but later agreed to allow the officers to search inside the pickup. When Spencer asked if he knew whether or not the officers would find any narcotics, Chasak said they would but that they were not his. A short time later, two ounces of methamphetamine were found underneath the passenger-side floorboard area.

During the time Spencer was talking to Chasak, Drum tried to move closer to Chasak and told him not to do anything.

During the traffic stop, Brimer approached the passenger side of the vehicle, and asked Drum to step out. Drum agreed to a pat down, and a small light bulb, a pocket scanner, and a pair of vice-grips were removed from his pockets. According to Brimer, Drum became very uncooperative and kept trying to resist the handcuffs being placed on him. However, neither Brimer nor Spencer saw any significant, injury-producing force being used against Drum. Drum was taken to Sedgwick County Jail by Sedgwick County Sheriff's Officers.

Frequently, Drum in his response controverts many points without offering any competing evidence or objects to the defendants' evidence without any valid basis. He alleges, in addition, that the van he was driving in the first instance was brown rather than white. He offers no evidence to support his claim Chasak's consent to search was coerced. He controverts, but again without evidence, Chasak's admission that there were narcotics in the vehicle but that they weren't his. He also challenges some of the sequence of events established by the defendants, but none of these challenges create any triable issue of material fact.

With regard to the claims involving both incidents, the court finds the defendants are protected by qualified immunity. In both instances traffic infractions exist which support the initial detention. Further, evidence obtained during the investigation created probable cause for seizure of the vehicles involved. In the first incident, Drum disavowed any interest in the van and was al-

lowed to leave without being subjected to arrest. A drug dog subsequently alerted to the van. In the second, the driver of the truck consented to its search, and independently acknowledged there were drugs in the vehicle.

Moreover, in both instances apparently reliable information from an informant had led the officers to suspect Drum. The informant accurately identified the time and place where Drum would acquire the methamphetamine. There is no evidence before the court which would indicate that the officer's reliance on the information was other than a good faith belief that narcotics would be found in the designated location.

### 4. The County Defendants

Finally, the court has before it the summary judgment by defendants Deputies Holland and McCaffree. The claims against Holland and McCaffree are two-fold—that they assisted the city officers in illegally detaining Drum, and that they caused serious bodily injuries to Drum through the exercise of excessive force in the detention. The first claim must stand or fall with the claim against the city police officers, since this claim is essentially derivative of the contention that they assisted the city officers in the alleged illegal detention. The court finds that summary judgment is appropriate as to the claim of illegal detention.

■ In addition, the court finds that summary judgment is warranted as to the excessive force claim. Despite the volume of pleadings submitted by Drum, the excessive force claim is straightforward. Deputies Holland and McCaffree, driving separate vehicles, arrived at the scene of the traffic stop at 55th Street South and Palisade in Wichita, Kansas in response to a request for assistance from the city police. Defendant Brimer asked Holland to watch Drum while she talked to the driver of the vehicle, Greg Chasak. Chasak gave permission for the city officers to search the vehicle.[1]

Holland and McCaffree watched Drum while the search took place. There is some contradictory evidence as to whether Drum resisted being handcuffed prior to the search. Drum alleges that Deputy Holland ordered him to lie face down on the ground where there "was alot of hard dirt clots, and dirt, rock clots on the ground I was laying in, not a lot of grass." (Plf. aff. at ¶ 19). At some point, Holland "grabbed" Drum, said "I told you to put your fucking face in the ground," (Id. at ¶ 20) and then held or shoved Drum's face against the ground.

Holland and McCaffree were released at the scene and they returned to their duties, having no further contact with Drum. Neither Detective Brimer nor Sergeant Spencer saw either deputy apply any physical force against Drum at the scene of the traffic stop.

Drum was booked into the Sedgwick County Local Adult Detention Facility at about 12:30 a.m. on March 16, 1995, and was then photographed for the Wichita Police Department. The color photograph is attached to Exhibit 6 of the defendants' motion. The defendants have also submitted an affidavit from booking officer Jeffrey Ohmart, who avers that, when Drum was booked, he "asked him if he had any medical condition with which the Detention Facility should be aware, his response was no." (Exh. 6, at ¶ 6). Ohmart states that the photograph is a fair and accurate copy of the photograph, which in turn fairly and accurately reflected Drum's appearance when he was booked on March 16, 1995.

At around 7:39 p.m. on March 17, Drum was moved from the jail's booking area to Pod One. Drum arrived at Pod One around 8:37 p.m. During this transfer—some 45 hours after his contact with Holland and McCaffree—an identification picture was taken of Drum with a Polaroid camera. The photograph was placed into an identification badge. (Def.Exh. 5).

At around 4:40 p.m. on March 18, Drum was seen by a nurse assistant at the jail, who found that Drum had blood in the left nostril, a swollen left cheek and face, and a "raccoon's eye."

The defendants have introduced the affidavit of forensic pathologist Dr. Corrie May,

---

1. Drum contends that the consent was "COHERCED" (Resp. at 2), but there is no admissible evidence provided by Drum in support of that allegation.

who states that in her opinion, the injuries described in the nurse assistant's report are not present in the initial booking photograph, and Drum's injuries were inflicted while he was in the jail's booking area. While the second photograph does show bruising, it does not show any evidence of abrasions of the type which would have arisen if his face had been rammed into the ground.

It has been clearly established that citizens have the right under the Fourth Amendment to be free from the use of excessive force by government officials. *Graham v. Connor,* 490 U.S. 386, 395, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989).

> Whether force is excessive in violation of the Eighth Amendment depends upon the circumstances confronting the officer as well as the nature and amount of force applied in reaction. *Whitley v. Albers,* 475 U.S. 312, 321, 106 S.Ct. 1078, 89 L.Ed.2d 251 (1986). Also relevant is the extent of any injury. *Hudson v. McMillian,* 503 U.S. 1, 9–11, 112 S.Ct. 995, 117 L.Ed.2d 156 (1992). Minor injury does not preclude an action for excessive force, but "de minimis uses of physical force" ordinarily will not support a claim. *Id.* at 9–10 [, 112 S.Ct. 995].

*Thompson v. Hamilton,* Case No. 97–6084, 1997 WL 639320 (10th Cir. Oct.14, 1997).

Here, the essence of the defense is the photographs taken of Drum when he was first booked, and then later transferred out of the booking area to another part of the jail. In Drum's response, he vigorously objects to the photographs, which he suggests were "tampered with or product of flash photography or professional developing or cleansing." (Resp. at 4, ¶ 19). He also objects to the photographs on chain of custody grounds, and suggests "the alledge [sic] body picture has amazing clearity [sic], in fact to [sic] much clearity [sic]." Resp. at ¶ 21.

The plaintiff's objections are without merit. There is no chain of custody question. The defendants have introduced evidence, uncontroverted by the plaintiff, that the photographs fairly represent Drum at the time the photographs were taken. The defendants have also submitted uncontroverted medical testimony that the subsequent serious injuries allegedly incurred by Drum could not have happened as a result of the contact with Holland and McCaffree, but while Drum was in the jail.

The initial booking photo (Def.Exh. 6, Att.2) is clear. The photograph fails to reveal even the slightest blemish or injury to the plaintiff. The subsequent transfer photo (Def.Exh. 5, Att.3), is radically different. To the extent Drum suffered the injuries he now complains of, the uncontroverted evidence compels the conclusion that such injuries were inflicted in the jail by person or persons unknown after Drum was booked, long after all contact with the named defendants had terminated.

IT IS ACCORDINGLY ORDERED this 19th day of August, 1998, that the defendants' motions for summary judgment (Dkt. Nos. 90 and 116) are hereby granted. Defendants' motions to quash or for protective orders (Dkt. Nos. 99 and 111) are granted; defendant's motion for leave to file out of time (Dkt. No. 81) is hereby denied. Plaintiff's various motions (Dkt.Nos.74, 76, 77, 79, 80, 83, 84.1, 84.2, 87, 108, 109, 112, 120, 122, 127) are denied.