

2008 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

1-16-2008

# Wilson v. Brown

Precedential or Non-Precedential: Non-Precedential

Docket No. 07-2328

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2008

Recommended Citation

"Wilson v. Brown" (2008). *2008 Decisions.* Paper 1730.
http://digitalcommons.law.villanova.edu/thirdcircuit_2008/1730

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2008 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

BLD-61                                                                                    NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

NO. 07-2328
_____

DAVID WILSON,
Appellant

v.

DEVON BROWN; TERRENCE MOORE; EDWARD KOCSERHA; KEVEN SAVOY;
SCO. SILUAR; SCO LAZHRUS; JOHN DOE; JANE DOE ET AL.; LYDELL
SHERRER; SCO PARKS; SCO MCDANIEL; JOHN AND JANE DOES 1 THROUGH
7; GARY LASSITER; MAURICE PARKS; ROBERT SILVA

_____

On Appeal From the United States District Court
For the District of New Jersey
(D. N.J. Civ. No. 04-cv-03637)
District Judge:  Honorable Joel A. Pisano

_____

Submitted For Possible Dismissal Pursuant to 28 U.S.C. § 1915(e)(2)(B) or Summary
Action Pursuant to Third Circuit LAR 27.4 and I.O.P. 10.6
November 21, 2007

Before:    MCKEE, RENDELL and  SMITH, Circuit Judges

(Opinion Filed: January 16, 2008)
_____

OPINION
_____

PER CURIAM

    David Wilson, a New Jersey state prisoner proceeding pro se, appeals from an

order of the United States District Court for the District of New Jersey granting summary

judgment in favor of prison officials and employees in his civil rights action. Because this appeal does not raise a substantial question, we will summarily affirm the District Court's order.

Wilson's civil rights action arose out of two separate incidents. First, while Wilson was incarcerated at East Jersey State Prison in a unit known as "6 Wing," a fire occurred in the middle of the night and destroyed the unit. 6 Wing was comprised of modular trailers connected by common areas. Wilson had been living there for about one year before the fire, which was caused by an accidental electrical malfunction. Wilson testified that he inhaled a lot of smoke as a result of the fire. He claimed that prison officials and employees violated his Eighth Amendment right to safe conditions of confinement and to medical care after the fire.

In granting summary judgment for the prison officials and employees on this claim, the District Court correctly held that Wilson failed to produce any evidence supporting his allegation that he was housed under conditions subjecting him to an unreasonable risk of death or injury by fire. The record reflects that 6 Wing was not equipped with sprinklers, but that the unit had smoke detectors and fire extinguishers. Although Wilson also argued that two correctional officers were asleep and unprepared to react to the fire when it began, we agree with the District Court that there is no evidence supporting the conclusion that the officers were deliberately indifferent to a substantial risk of harm to the inmates. See Farmer v. Brennan, 511 U.S. 825, 837 (1994). The

record also does not reflect that an issue of fact exists as to whether Wilson was deprived of medical care. Wilson testified that he received medical treatment on the night of the fire and thereafter.

The second incident from which Wilson's complaint arose occurred after he was transferred to North State Prison. A correctional officer electronically let Wilson out of his cell to shower. Wilson testified that, on his way back to his cell, Officer Parks was inside the unit with the nurse. Wilson stated that they should have been on the other side of the gate because the unit is typically locked down, and there is no movement, during showers. When Wilson saw the nurse, he turned and told Parks that he was going back in the shower. Parks, however, told Wilson to come with him.

Parks handcuffed Wilson, and then let himself and the nurse outside the gate. Wilson asked Parks to take the handcuffs off of him, but Parks refused. According to Wilson, Parks threatened to lock him up and give him "a disciplinary," and told him to "lock in." Wilson Dep. at 95. Wilson told Parks that it was not the protocol for Parks to lock him in his cell with handcuffs, and asked Parks why he was doing so. Parks asked Wilson if he was refusing to lock in, which was Wilson's warning that Parks would call in other officers who deal with misbehaving inmates.

Wilson told Parks that he was not refusing to lock in, and he went in his cell with the handcuffs on. Once locked in, Wilson called for Parks several times, but Parks ignored him. Wilson, who was still undressed, covered himself up, waited for Parks, and

3

eventually fell asleep. The next morning, another officer found Wilson with the handcuffs on and took him to the medical unit, where Wilson stated he was placed in protective custody. Several days later, he returned to the unit. Parks received a ten-day suspension from work for neglect of duty because he failed to remove the handcuffs. Wilson claimed in his complaint that Parks violated his Eighth Amendment rights by subjecting him to excessive force.[1]

The Eighth Amendment's prohibition of cruel and unusual punishment necessarily excludes from constitutional recognition de minimis uses of physical force, provided that the use of force is not of a sort repugnant to the conscience of mankind. Hudson v. McMillian, 503 U.S. 1, 9 (1992). Although we do not hold that leaving an inmate in his cell in handcuffs can never rise to the level of an Eighth Amendment violation, we conclude that the facts of this case fall short of establishing a constitutional violation as a matter of law. Wilson was not subjected to a use of force that was repugnant to the conscience of mankind.

Accordingly, we will summarily affirm the District Court's order.

---

[1] In their summary judgment motion, the defendants noted that Wilson testified that he was diagnosed with "handcuff neuropathy" as a result of the incident. Because Wilson did not submit any medical records or his deposition transcript, there is nothing in the record establishing such a diagnosis. Based on the defendants' evidence, the District Court found that Wilson's medical examination did not reveal any bruising, swelling, or deficiency in range of motion.