**NOT FOR PUBLICATION**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

**FILED**

JAN 6 2021

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

STACEY M. RICHARDS,

            Plaintiff-Appellee,

  v.

JAMES GREG COX; et al.,

            Defendants-Appellants,

 and

MICHAEL BYRNE; et al.,

            Defendants.

No.    19-17193

D.C. No.
2:16-cv-01794-JCM-BNW

MEMORANDUM[*]

Appeal from the United States District Court
for the District of Nevada
James C. Mahan, District Judge, Presiding

Argued and Submitted December 10, 2020
San Francisco, California

Before:  TALLMAN, MURGUIA, and CHRISTEN, Circuit Judges.

    Plaintiff-Appellee Stacey Richards brings Eighth Amendment claims against

individual officials with the Nevada Department of Corrections and Ely State Prison

--------

    [*]    This disposition is not appropriate for publication and is not precedent
except as provided by Ninth Circuit Rule 36-3.

("Ely Prison") based on injuries Richards suffered as a result of a prison policy directing officials to shoot birdshot at the ground to quell fights among inmates (the "birdshot policy") while non-fighting inmates were required to "get down" on the ground. Defendants-Appellants—Director James Cox, Warden Renee Baker, and Correctional Officer Eric Boardman—appeal the district court's order denying their motion for summary judgment based on qualified immunity. We have jurisdiction pursuant to 28 U.S.C. § 1291,[1] and we review de novo the district court's denial of summary judgment based on qualified immunity. *Johnson v. Cnty. of L.A.*, 340 F.3d 787, 791 (9th Cir. 2003). Because the parties are familiar with the facts, we do not recite them here. We affirm in part, vacate in part, and remand.

Defendants-Appellants argue that they are entitled to qualified immunity from Richards's Eighth Amendment claims. Qualified immunity involves a two-part inquiry at the summary judgment stage. *See Tolan v. Cotton*, 572 U.S. 650, 655–56 (2014). First, the court asks whether, viewing the facts in the light most favorable to the non-moving party, a government official's conduct violated a federal right. *Id.* In the Eighth Amendment context, this determination involves both a subjective

---

[1] We have jurisdiction over this interlocutory appeal "so long as we assume the version of the material facts asserted by the non-moving party to be correct." *Johnson v. Cnty. of L.A.*, 340 F.3d 787, 791 n.1 (9th Cir. 2003) (internal citation and quotation marks omitted); *accord Ames v. King Cnty.*, 846 F.3d 340, 347 (9th Cir. 2017).

inquiry and an objective inquiry: whether the official subjectively acted with a "sufficiently culpable state of mind" and whether the alleged harm objectively was "sufficiently serious." *See Farmer v. Brennan*, 511 U.S. 825, 834 (1994) (internal citation omitted). Second, the court asks whether that federal right "was clearly established at the time of the alleged violation." *Isayeva v. Sacramento Sheriff's Dep't*, 872 F.3d 938, 945 (9th Cir. 2017). If the answer to either question is "no," the official is entitled to qualified immunity. *See id.* at 946.

1.     The district court did not err by denying Director Cox and Warden Baker ("Supervisor Defendants") qualified immunity from Richards's Eighth Amendment claims against them. The Supervisor Defendants are liable only for their own actions that result in a constitutional violation. *See Starr v. Baca*, 652 F.3d 1202, 1207–08 (9th Cir. 2011). A supervisor may be liable for implementing "a policy so deficient that the policy itself is a repudiation of constitutional rights and is the moving force of the constitutional violation." *Jeffers v. Gomez*, 267 F.3d 895, 914 (9th Cir. 2001) (internal citation and quotation marks omitted).

Richards contends that the Supervisor Defendants violated his Eighth Amendment right to be free from cruel and unusual punishment by implementing the birdshot policy—combined with "get-down orders"[2]—to quell non-deadly

---

[2] When a prison fight occurs at Ely Prison, correctional officers order both fighting and non-fighting inmates to "get down on the ground." This is known as a get-down order.

3

disturbances in Ely Prison. Only the subjective inquiry—whether the Supervisor Defendants acted with a sufficiently culpable state of mind—is at issue here.[3]

Here, the parties agree that the requisite state of mind for the Supervisor Defendants—when enacting the birdshot policy in combination with get-down orders—is "deliberate indifference" to inmate safety.[4] The "deliberate indifference" standard requires a prison official to subjectively know of and consciously disregard an excessive risk to inmate safety. *See Farmer*, 511 U.S. at 837. The district court here properly determined that, viewing the material facts in a light most favorable to Richards, a reasonable jury could find that the Supervisor Defendants were deliberately indifferent to inmate safety in implementing the birdshot policy in combination with get-down orders. The district court also determined that the Supervisor Defendants' policy was "so deficient" that it constituted the moving force behind Richards's constitutional violation.[5] The Supervisor Defendants admitted

---

[3] Defendants-Appellants do not argue that Richards's harm objectively was not sufficiently serious. Richards was shot in the face with a shotgun and is now legally blind.

[4] During oral argument, the government conceded that the "deliberate indifference" standard is appropriate with respect to Director Cox and Warden Baker's policy. We agree. *See Jeffers*, 267 F.3d at 914–915.

[5] Before the district court, the Supervisor Defendants did not dispute that they knew of prior incidents in which innocent bystanders were injured pursuant to their birdshot policy in conjunction with get-down orders.

4

that Richards was shot in the face by a correctional officer attempting to follow their birdshot policy.

We agree with the district court that the Supervisor Defendants' policy was "so deficient" that it constituted the moving force behind a constitutional violation. That is because the Supervisor Defendants' policy required bystander inmates to lie on the ground while correctional officers fired 12-gauge shotguns—loaded with birdshot cartridges containing hundreds of metal pellets—directly at the ground during non-deadly prison disturbances. To make matters worse, the Supervisor Defendants admitted that their policy did not require correctional officers to consider the safety of any bystander inmate lying on the ground before firing a 12-gauge shotgun directly at the ground.

Next, the district court correctly determined that the constitutional right violated was "clearly established" when Richards was shot in the face on April 21, 2015. "A clearly established right is one that is sufficiently clear that every reasonable official would have understood that what he is doing violates that right." *Isayeva*, 872 F.3d at 946 (internal citation and quotation marks omitted). But a court need not find that the "very action in question has previously been held unlawful" in order for the action to violate a clearly established right. *Hope v. Pelzer*, 536 U.S. 730, 739, 741 (2002) (internal citation omitted) (denying qualified immunity to prison officials who handcuffed a prisoner to a hitching post as punishment despite

no earlier case law involving materially similar facts).  Preexisting law must simply provide a defendant with "fair warning" that certain conduct was unlawful.  *Id.* at 740–41; *Schwenk v. Hartford*, 204 F.3d 1187, 1197 (9th Cir. 2000).

The Supervisor Defendants request qualified immunity here because, when Richards was shot in April 2015, no prior case law had specifically held that a birdshot policy combined with get-down orders violated the Eighth Amendment.  But it has long been clearly established that prison officials may not act with deliberate indifference to inmate safety.  *Farmer*, 511 U.S. at 834.  And "general statements of the law are not inherently incapable of giving fair and clear warning[] and . . . may apply with obvious clarity to the specific conduct in question[.]"  *United States v. Lanier*, 520 U.S. 259, 271 (1997); *accord Hope*, 536 U.S. at 739, 741.  No reasonable prison supervisor could believe that the Eighth Amendment permitted a policy in which bystander inmates are required to lie on the ground while correctional officers fire a 12-gauge shotgun loaded with birdshot directly at the ground in non-deadly situations—especially without considering the safety of the bystander inmates lying on the ground.  *See Hope*, 536 U.S. at 739, 741.  The Supervisor Defendants' policy resulted in hundreds of metal pellets in each birdshot cartridge ricocheting and striking innocent bystanders lying on the ground.  The Supervisor Defendants therefore had a "fair warning" that their birdshot policy, combined with get-down orders, violated the Eighth Amendment.  *See id.*; *Lanier*,

6

520 U.S. at 271. The district court did not err by denying the Supervisor Defendants summary judgment based on qualified immunity.

2.      The district court erred, however, when analyzing whether Officer Boardman was entitled to qualified immunity from Richards's Eighth Amendment claim. Richards contends that Officer Boardman violated his Eighth Amendment right to be free from cruel and unusual punishment by ordering all inmates to get on the ground and subsequently firing a 12-gauge shotgun at the ground twice, striking Richards in the face with several metal pellets.

Determining whether Officer Boardman violated Richards's Eighth Amendment right requires a subjective inquiry into whether Officer Boardman acted with a "sufficiently culpable state of mind." *Farmer*, 511 U.S. at 834 (internal citation omitted). The requisite state of mind depends on the nature of his actions as a prison official. *See id.* at 835–36. If an inmate challenges either a prison official's force as excessive or a prison official's actions during a prison disturbance, the prison official must act "maliciously and sadistically" for the very purpose of causing harm. *Hudson v. McMillian*, 503 U.S. 1, 6–7 (1992) (explaining that the "malicious and sadistic" standard, not the "deliberate indifference" standard, is appropriate when analyzing use of force under the Eighth Amendment); *Jeffers*, 267 F.3d at 910–11, 913 (explaining that a prison official's actions during an ongoing prison security measure is governed by the "malicious and sadistic" standard). But

7

if an inmate challenges general prison conditions affecting inmate safety or health, the prison official must act with "deliberate indifference" to inmate safety or health. *See Farmer*, 511 U.S. at 834.

Here, Richards brings an Eighth Amendment claim against Officer Boardman for excessive force.[6] This claim arises out of Officer Boardman ordering all inmates to get down on the concrete floor inside Ely Prison, a maximum-security facility, during a prison fight and subsequently firing two shots from a 12-gauge shotgun loaded with birdshot directly at the floor where Richards was lying in compliance with the get-down order. Because Officer Boardman's actions involve the use of force (firing a shotgun) and taking actions during a prison disturbance (ordering all inmates to get on the ground during a prison fight), the "malicious and sadistic" standard governs. *See Hudson*, 503 U.S. at 6–7; *Jeffers*, 267 F.3d at 910–11, 913. But the district court here instead analyzed whether Officer Boardman acted with deliberate indifference to inmate safety. In doing so, the district court applied the incorrect subjective standard.[7] This was an error. *See Hudson*, 503 U.S. at 6–7; *Jeffers*, 267 F.3d at 910–11, 913.

---

[6] Although Richards's appellate brief purports to also assert a deliberate indifference claim against Officer Boardman, we note that Richards expressly disclaimed this type of Eighth Amendment claim in his own complaint.

[7] To decide whether Officer Boardman acted maliciously and sadistically, the district court should have considered the following five factors: (1) the need to apply force;

8

Further, the district court did not properly analyze whether Officer Boardman's actions violated a clearly established right. The district court found that a disputed issue of material fact existed as to whether Officer Boardman fired a blank cartridge before firing a birdshot cartridge and ended its analysis there. But the district court stopped too soon. The district court was also required to view the evidence in a light most favorable to Richards—in other words, assume that Officer Boardman fired two live rounds—and analyze whether it was clearly established that Officer Boardman's actions violated the Eighth Amendment. *See Cmty. House, Inc. v. City of Boise*, 623 F.3d 945, 967 (9th Cir. 2010). By failing to do so, the district court erred. *See id.* We vacate in part and remand so that the district court may conduct the proper analysis as to Officer Boardman. Each party shall bear its own costs on appeal. *See* Fed. R. App. P. 39(a)(4).

**AFFIRMED IN PART, VACATED IN PART, AND REMANDED**.

---

(2) the extent of Richards's injuries; (3) the relationship between the need for force and the amount of force used; (4) the nature of the threat perceived by prison officials; and (5) efforts to temper the severity of a forceful response. *See Hudson*, 503 U.S. at 7 (citation omitted).